## MARTORELL ET AL., DEMANDANTES Y APELANTES, *v.* J. OCHOA Y HERMANO ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª. en pleito sobre nulidad y reivindicación.

No. 1499.—Resuelto en julio 27, 1918.

VENTA DE BIENES DE MENORES—JURISDICCIÓN.—De acuerdo con los artículos 54 y 74 de la antigua Ley de Enjuiciamiento Civil las partes tenían el derecho de acudir en solicitud de autorización para la venta de bienes de menores a cualquier juez o tribunal que tuviera jurisdicción para conocer de esa materia, y como dicha jurisdicción indudablemente radicaba en los juzgados de primera instancia, el juzgado a que se acudiera no podía negarse a conocer del caso estimándose incompetente por razón de la materia.

AUTORIZACIÓN JUDICIAL—BIENES DE MENORES—COMPETENCIA PARA OTORGAR AUTORIZACIÓN JUDICIAL.—Aun cuando el artículo 164 del Código Civil Español establece la necesidad de la autorización judicial para la venta de bienes de menores y también fija la competencia del juez del domicilio para otorgar dicha autorización, esa competencia no impedía que con arreglo al artículo 56 de la Ley de Enjuiciamiento Civil española se pudiera acudir a cualquier juez de jurisdicción ordinaria para obtener la autorización, ya que la disposición contenida en el artículo 1976 del mencionado Código Civil sólo contiene cláusula derogatoria del derecho civil común en todas las materias que son objeto del código y no en las materias ajenas al mismo como son las de carácter adjetivo o procesal.

LEY DE ENJUICIAMIENTO CIVIL ANTIGUA—CÓDIGO CIVIL ESPAÑOL.—Los artículos 56 y 58 de la antigua Ley de Enjuiciamiento Civil, que se refieren a la competencia y sumisión de las partes, no fueron derogados por el artículo 164 del Código Civil Español en la materia específica a que el citado artículo se refiere sino que quedaron vigentes como complementarios del mismo. Pueden armonizarse y no hay verdadero conflicto entre ellos.

RESOLUCIÓN ANTERIOR—LEY TRADICIONAL DEL CASO.—La corte puede apartarse de una resolución dictada anteriormente en el mismo caso, pues la tradicional ley del caso jamás puede justificar un deliberado sacrificio de los principios esenciales de justicia impidiendo que se rectifique un error cometido.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José y Manuel Tous Soto.*

Abogados de los apelados: *Sres. Bosch y Soto.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Se trata de recurso de apelación interpuesto por la parte demandante contra sentencia que en el caso arriba expresado

pronunció la Corte de Distrito de San Juan, Sección 1ª., en 22 de diciembre de 1915 desestimando la demanda sin especial condenación de costas.

En dicha demanda enmendada, siendo la original de fecha 5 de junio de 1914, se pide que se declare nula en cuanto a los condominios correspondientes a los demandantes la adjudicación en pago de ciertas fincas rústicas que se describen en la demanda bajo los números 1, 2, 3, 4, 5, 6 y 7, declarándose que a cada uno de los demandantes le corresponde en cada una de las referidas fincas un condominio de 2/18 partes en plena propiedad y otro condominio de ⅛ parte en nuda propiedad en un condominio de 2/18 partes y condenando a la sociedad demandada a reconocer dichos condominios y a reintegrarlos a los actores con sus frutos y rentas percibidos y podidos percibir, de los cuales deberá rendir cuenta detallada y justificada en el término que se le fije, con costas, desembolsos y honorarios de abogado a cargo de la demandada.

Los hechos determinantes de la acción, que la corte *a quo* estima probados, son los siguientes:

(*a*) A cada uno de los demandantes correspondía en cada una de las fincas que se describen en la demanda, un condominio de 1/9 parte de la mitad, o sean 2/18 partes de la totalidad en plena propiedad y otro condominio de ⅛ parte de 2/18 partes en nuda propiedad.

(*b*) Doña Rosa Torrens, en representación de los demandantes menores de edad entonces, en el ejercicio de su patria potestad vendió a la sociedad J. Ochoa y Hermano por escritura de 18 de marzo de 1904, los condominios correspondientes en plena propiedad a dichos menores, como herederos de su padre don Pedro Martorell, en los referidos inmuebles.

(*c*) Doña Rosa Torrens verificó la referida venta en virtud de autorización que le fué concedida por la Corte de Distrito de San Juan por resolución de 28 de abril de 1902, teniendo en esa fecha así como al tiempo de otorgarse la escritura, la expresada señora y sus hijos menores bajo su

patria potestad, su residencia, domicilio y vecindad en el Municipio de Ciales.

(*d*) La sociedad demandada se encuentra actualmente en posesión de los inmuebles descritos en la demanda y ha estado en dicha posesión desde que se otorgó la escritura de venta, percibiendo los frutos y rentas de los mismos.

(*e*) La sociedad J. Ochoa y Hermano sostenía correspondencia con doña Rosa Torrens y con la sucesión de don Pedro Martorell, dirigida al pueblo de su residencia, o sea Ciales, y estaba enterada de que Ciales era la residencia habitual de la señora Torrens y de sus hijos al tiempo de concederse la autorización judicial.

La parte demandada alegó como defensa especial que la acción ejercitada había prescrito de acuerdo con el artículo 1858 del Código Civil revisado y la corte por ese fundamento desestimó la demanda en su sentencia de 22 de diciembre de 1915.

Esta Corte Suprema, visto y considerado el recurso, confirmó la sentencia apelada por la que dictó en 28 de julio de 1917 y de esa sentencia solicitó la parte demandante reconsideración que le fué concedida, habiéndose traído nuevamente el caso a estudio con alegaciones así escritas como orales de la representación de los apelantes y del abogado Antonio F. Castro en concepto de *amicus curiae,* y alegaciones orales de la representación de la parte apelada.

La cuestión legal principal a discutir es si ha habido o no justo título para la prescripción o sea si es bastante para ella la escritura de venta de 18 de marzo de 1904 por la que Rosa Torrens en representación de los demandantes entonces menores de edad, en el ejercicio de su patria potestad, vendió a la sociedad J. Ochoa y Hermano los condominios de que se trata, habiendo obrado como obró Rosa Torrens con una autorización judicial para la venta que le fué concedida en resolución de 28 de abril de 1902 por la Corte de Distrito de San Juan que no era la del domicilio de los menores.

Esa resolución dice así:

"Resultando que doña Rosa Torrens Risech ha solicitado autorización para vender las participaciones proindivisas que sus menores hijos sujetos a su patria potestad y llamados doña Teresa, don Antonio, don Luis, don Miguel y don Gerardo Martorell y Torrens tienen en las fincas rústicas siguientes: * * * (las fincas que se describen en la demanda). Resultando que por los tres testigos sin tacha a los que certifica conocer el secretario se ha justificado con citación del ministerio público la necesidad y la utilidad en cuanto a los dichos menores en la indicada venta siendo el Sr. Fiscal de parecer que se conceda la autorización pedida. Considerando lo que disponen los artículos 164 del Código Civil, 2010 y siguientes, y 2029 de la Ley de Enjuiciamiento Civil, se autoriza a doña Rosa Torrens y Risech en cuanto a sus indicados hijos menores, para que venda las participaciones que en las mencionadas fincas tienen aquéllos. Lo acordaron los Sres. del Tribunal y firman todos de que certifico: Juan R. Ramos.—Juan Morera Martínez.—José R. F. Savage. Ante mí, Ramón Falcón."

Para apreciar la eficacia legal de dicha resolución se hace necesario fijar ante todo cuál era la legislación vigente en Puerto Rico, aplicable al otorgarse a Rosa Torrens en 28 de abril de 1902 la autorización que la parte demandante arguye de nula e inexistente.

Estaban entonces vigentes en Puerto Rico la Ley de Enjuiciamiento Civil que comenzó a regir en 1º. de enero de 1886 a virtud de Real Decreto de 25 de septiembre del año anterior, y el Código Civil que comenzó a regir en 1º de enero de 1890 a virtud de Real Decreto de 31 de julio de 1889.

Como se ve la vigencia de la Ley de Enjuiciamiento Civil fué anterior a la del Código Civil.

Las reglas determinantes de la competencia según la Ley de Enjuiciamiento Civil citada, que pueden ser atinentes al caso, son las comprendidas en los artículos 56, 58 y 63 que en lo conducente dicen así:

"Art. 56.—Será juez competente para conocer de los pleitos a que dé origen el ejercicio de las acciones de toda clase, aquel a quien los litigantes se hubieren sometido expresa o tácitamente.

"Esta sumisión sólo podrá hacerse al juez que ejerza jurisdicción ordinaria y que la tenga para conocer de la misma clase de negocios y en el mismo grado."

"Art. 58.—Se entenderá hecha la sumisión tácita:

"1º. Por el demandante en el mero hecho de acudir al juez interponiendo la demanda.

"2º. Por el demandado en el hecho de hacer después de personado en el juicio cualquiera gestión que no sea la de proponer en forma la declinatoria."

"Art. 63.—Para determinar la competencia, fuera de los casos expresados en los artículos anteriores se seguirán las reglas siguientes:

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"23. En las autorizaciones para la venta de bienes de menores o incapacitados, será juez competente el del lugar en que los bienes se hallaren o el del domicilio de aquellos a quienes pertenecieren."

Comentando Manresa el citado artículo 63 se expresa en los siguientes términos:

"¿Serán tan absolutas estas reglas especiales de competencia, que excluyan en todo caso la sumisión expresa o tácita de las partes?

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"La duda podría ocurrir en la aplicación de las demás reglas por referirse a procedimientos que no constituyen pleitos, en el sentido estricto de esta palabra, al tiempo de incoarlos, como sucede en los embargos preventivos, desahucios, retractos, interdictos y deslindes, a que se refieren las reglas 12, 13, 14 y 15, y en los actos de jurisdicción voluntaria de que tratan las restantes, excepto la 21, que examinaremos por separado. 'En cuanto a dichos actos,' dijo el Tribunal Supremo en varias decisiones de competencia, después de regir la Ley Orgánica de 1870, en la cual se establecieron las reglas de que se trata, y no obstante las mismas, que según el propio tribunal tenía declarado en repetidas sentencias, 'en los actos de jurisdicción voluntaria no tiene cabida la cuestión de competencia porque ésta la concede la regla 1ª. del artículo 1208 de la ley de enjuiciamiento (la de 1855) al juez ante quien se acude, y sólo puede promoverse cuando aquéllos, perdiendo su carácter de jurisdicción voluntaria, se hayan convertido en asuntos judicialmente contenciosos.' (Sentencias de julio 22 y septiembre 30 de 1875; octubre 6 de 1866 y junio 2 de 1877.) Esta doctrina reconoce como base la sumisión del actor, por el mero hecho de acudir al juez deduciendo

su pretensión, y aunque la nueva ley no contiene la regla antes citada de la antigua, está el artículo 56 que concede preferencia para conocer de las acciones de toda clase al juez a quien se hubieren sometido los interesados; por lo cual entendemos que ha de considerarse subsistente la jurisprudencia antes citada del Tribunal Supremo.''

Manresa y Navarro, Comentarios a la Ley de Enjuiciamiento Civil, tomo 1, páginas 217 y 218, edición de 1910.

Que el precepto del artículo 56 de la Ley de Enjuiciamiento Civil española ya transcrito contiene una regla general tanto en los casos de jurisdicción contenciosa como en los de jurisdicción voluntaria, se confirma por los artículos 54 y 74 de la misma ley, que dicen así:

''Art. 54.—La jurisdicción civil podrá prorrogarse al juez o tribunal que por razón de la materia, de la cantidad objeto del litigio y de la gerarquía que tenga en el orden judicial, pueda conocer del asunto que ante él se proponga.''

''Art. 74.—En ningún caso se promoverán de oficio las cuestiones de competencia en los asuntos civiles; pero el juez que se crea incompetente por razón de la materia podrá abstenerse de conocer, oído el ministerio fiscal, previniendo a las partes que usen de su derecho ante quien corresponda.''

En virtud de lo dispuesto en el artículo 54 es obvio que las partes tienen el derecho de acudir en solicitud de autorización para la venta de bienes de menores ante cualquier juez o tribunal que tuviera jurisdicción para conocer de esa materia, jurisdicción que indudablemente radicaba entonces en los juzgados de 1ª. instancia y teniendo presente la disposición del artículo 74, el juzgado a quien se acudiera no podía negarse a conocer del caso por tratarse de materia sometida a su jurisdicción.

''Esta disposición'' (la del artículo 74), dice el mismo comentarista Manresa y Navarro, ''es la consecuencia natural de lo que prescriben los artículos 54 y 56; según ellos es prorrogable la jurisdicción civil, y tiene competencia preferente el juez a quien se hubieren sometido las partes expresa o tácitamente. Luego están obligados los jueces a aceptar el conocimiento de los negocios civiles que los liti-

gantes sometan a su jurisdicción y no pueden por tanto inhibirse y promover de oficio cuestión alguna de competencia.   *   *   *   Esta regla tiene una excepción, que se deduciría de los artículos antes citados si no la estableciera expresamente el que estamos comentando.   No puede prorrogarse jurisdicción ante juez que no la tenga para conocer del asunto por razón de la materia, de la cantidad objeto del litigio, o del grado o instancia en que se halle el negocio, como lo previene el artículo 54.   *   *   *   En tales casos es radical y absoluta la incompetencia porque procede de la falta de jurisdicción, y como es de orden público que ningún juez ni autoridad traspase el límite de sus atribuciones, de aquí la facultad que el artículo que estamos comentando concede a los jueces para que se abstengan de conocer cuando se crean incompetentes por razón de la materia, aunque los interesados no propongan la declinatoria ni la inhibitoria.''   Manresa y Navarro, Comentarios a la Ley de Enjuiciamiento Civil, tomo 1, páginas 240 y 241.

Y no puede sostenerse que el artículo 164 del Código Civil Español aplicable al caso por ser el que regía cuando el Juzgado de 1ª. Instancia de San Juan concedió a Rosa Torrens la autorización para la venta de bienes inmuebles de sus menores hijos, derogara los preceptos de la Ley de Enjuiciamiento Civil que entonces regía y que según jurisprudencia del Tribunal Supremo de España y de la Dirección General de los Registros afectaban así a los casos de jurisdicción contenciosa como de jurisdicción voluntaria.

Ese artículo dice así:

''Art. 164.—El padre o la madre en su caso no podrán enajenar los bienes inmuebles del hijo en que les corresponda el usufructo o la administración, ni gravarlos, sino por causas justificadas de necesidad o utilidad y previa la autorización del juez del domicilio, con audiencia del ministerio fiscal, salvas las disposiciones que en cuanto a los efectos de la trasmisión establece la Ley Hipotecaria.''

Opinamos que el artículo transcrito establece la necesidad de la autorización judicial para la venta de bienes de me-

nores y también fija la competencia del juez del domicilio
para otorgar dicha autorización, pero esa competencia no
impedía que con arreglo al artículo 56 de la Ley de Enjuicia-
miento Civil pudiera acudirse a cualquier juez de jurisdic-
ción ordinaria para obtener la autorización pues la disposi-
ción final contenida en el artículo 1976 del Código Civil sólo
contiene cláusula derogatoria de todos los cuerpos legales,
usos y costumbres que constituyan el derecho civil común en
todas las materias que son objeto del código, y no en las
materias ajenas al mismo como lo son las de carácter adje-
tivo o procesal.

"La competencia," como dice Manresa comentando el ar-
tículo 164 del Código Civil Español, "es una cuestión que
pertenece al derecho adjetivo y la disposición final del código
sólo deroga el derecho civil común." Manresa, Código Civil,
tomo 2, página 42, edición de 1903.

"El Código es una ley sustantiva y civil cuya publicación sólo
puede afectar a las de su misma índole, no a las de naturaleza di-
versa, esto es, a las adjetivas o procesales como es la de enjuiciamiento
civil." Scaevola, Código Civil, tomo 3, p. 311.

Entendemos, pues, que los artículos 56 y 58 de la antigua
Ley de Enjuiciamiento Civil no fueron derogados por el ar-
tículo 164 del Código Civil Español, sino que quedaron vi-
gentes como complementarios del mismo. No hay verdadero
conflicto entre aquéllos y éste sino que pueden armonizarse
en los términos expuestos.

La doctrina establecida por el Tribunal Supremo de Es-
paña en las sentencias de 22 de julio y 30 de septiembre de
1875, 6 de octubre de 1876 y 2 de junio de 1877, de que en
los actos de jurisdicción voluntaria no tienen cabida las cues-
tiones de competencia porque la ley concede ésta al juez ante
quien se haya acudido, ha sido invocada por la Dirección
General de los Registros de España en resoluciones de 22
de enero de 1886, 9 de mayo de 1889 y 8 de febrero de 1907,
como también por esta Corte Suprema al resolver en 25 de
marzo de 1905 recurso gubernativo de Solá contra nota del

Registrador de la Propiedad de Caguas, 8 D. P. R. 213.   En esa resolución dejamos establecido, tratándose precisamente de un caso de jurisdicción voluntaria ''que es principio general en materia de competencia, que es juez competente para conocer de los pleitos a que dé origen el ejercicio de las acciones de todas clases, aquél a quien los litigantes se sometan expresa o tácitamente siempre que tenga jurisdicción para conocer de la misma clase de negocios y en el mismo grado, y que este principio que establecía la antigua Ley de Enjuiciamiento Civil en su artículo 56, ha sido reproducido por el nuevo Código de Enjuiciamiento Civil en sus artículos 76 y 77 * * *.''   Siendo la autorización para la enajenación de bienes de menores un acto de jurisdicción voluntaria también a esa autorización es aplicable la doctrina expuesta.

Y debemos hacer constar que según el artículo 1814 de la antigua Ley de Enjuiciamiento Civil, en los actos de jurisdicción voluntaria debía ser oído el promotor fiscal cuando la solicitud promovida afectaba a los intereses públicos y cuando se refería a persona o cosa cuya protección o defensa competían a la autoridad, debiendo el promotor emitir por escrito su dictamen, y que para decretar la venta de bienes de menores exigía la misma ley en su artículo 2011, entre otros requisitos, que se oyera al promotor fiscal.   El promotor fiscal fué oído en el expediente promovido por Rosa Torrens para obtener la autorización de venta y lejos de oponerse estuvo conforme con ella sin que para la protección o defensa de los menores solicitara como pudo solicitar que el juez la denegara si estimaba de aplicación el precepto del artículo 74 del Código de Enjuiciamiento Civil, cuya resolución hubiera sido apelable para ante la Audiencia Territorial.

Por las cuestiones que trata nos parece oportuno transcribir la resolución de la Dirección General de los Registros de 22 de enero de 1886 que dice así:

''Considerando que para resolver la otra cuestión que en presente recurso se ventila, hay que investigar si las reglas especiales de com-

petencia que establece el artículo 63 de la Ley de Enjuiciamiento Civil son tal absolutas que excluyen en todo caso la sumisión expresa o tácita de las partes;

"Considerando que las mismas palabras del citado artículo 63 sirven para dar una solución a ese problema, ya que al ordenar que las reglas que contiene deben observarse fuera de los casos expresados en los artículos anteriores, reconoce que tales reglas son inaplicables a los casos de que tratan esos artículos, y como quiera que entre éstos se halla el 56, que sienta como principio general en materia de competencia la sumisión de las partes, es evidente que cuando ésta medie no puede invocarse la regla especial de competencia;

"Considerando que por más que puede oponerse a esta doctrina el que el citado artículo 56 habla de pleitos, y no tienen tal carácter los actos de jurisdicción voluntaria, en cuyo número figura el que ha dado origen al presente recurso, destruye tal objeción la doctrina sentada por el Tribunal Supremo en varias sentencias, y señaladamente en las de 22 de julio y 30 de septiembre de 1875, 6 de octubre de 1876 y 2 de junio de 1877, según las que en los actos de jurisdicción voluntaria, no tienen cabida las cuestiones de competencia porque la ley concede ésta al juez ante quien se haya acudido;

"Considerando que si bien esta jurisprudencia giraba sobre la regla 1ª. del artículo 1208 de la Ley de Enjuiciamiento Civil de 1855, regla que no contiene la nueva ley, no debe olvidarse en primer término, que cuando el Tribunal Supremo sentaba esa jurisprudencia, se hallaba ya vigente la Ley Orgánica de 1870, que consignaba casi todas las reglas de competencia que figuran en el artículo 63 de la presente ley; además, que el artículo 56 de ésta al conceder competencia preferente para conocer de las acciones de toda clase al juez a quien se hubieren sometido los interesados, consigna una regla general que alcanza también a los actos que nos ocupan, y deja subsistente la jurisprudencia del Tribunal Supremo; y por último, que es opinión de autorizados comentaristas que las reglas del artículo 63 de la Ley de Enjuiciamiento Civil sólo son aplicables a los casos en que no hay sumisión de todos los interesados en un asunto a diferente juzgado del que el referido artículo determina."

Es de notar que el Libro I de la antigua Ley de Enjuiciamiento Civil en que están incluídas las reglas de competencia a que nos hemos referido lleva por epígrafe "Disposiciones Comunes a la Jurisdicción Contenciosa y a la Voluntaria,"

y que por tanto el pensamiento del legislador español fué que los preceptos de competencia se aplicaran tanto a una como a otra jurisdicción.

Por el estudio que hemos hecho no tenemos conocimiento de un sólo caso en que se haya levantado y decidido por el Tribunal Supremo la cuestión legal sobre nulidad de una autorización concedida por un juez que no fuera el del domicilio del menor; pero la falta de jurisprudencia precisa sobre el particular nos induce a pensar que tal cuestión no se ha levantado por ser creencia general y uniforme, tanto en España como en sus posesiones, la de ser válida la autorización concedida por cualquier juez de jurisdicción ordinaria.

En el caso sometido a nuestra consideración ni el abogado que dirigió a Rosa Torrens y redactó la solicitud en demanda de autorización judicial para la venta de bienes de sus menores hijos, ni los tres jueces que conocieron de dicha solicitud, ni el fiscal que emitió dictamen favorable sobre ella, ni el notario que redactó la escritura de venta, ni el registrador que hubo de inscribir el título de dominio abrigaron la menor duda de que era legal el procedimiento empleado y aun más, los mismos demandantes han dejado transcurrir impasibles los años de 1904 al 1914 sin ejercitar el derecho de que se creen asistidos y sin alegar razón alguna que justificara su tardanza en el ejercicio de ese derecho, cual si ellos mismos estuvieran persuadidos de que la autorización era válida por haber sido concedida por juez competente.

Acaso la resolución de la Corte Suprema de los Estados Unidos en el caso de *Garzot* v. *Rubio,* 209 U. S. 303, y la nuestra en el caso de *Esterás* v. *Arroyo,* 16 D. P. R. 727 han influído para sacarlos del quietismo en que se encontraban; pero si se examinan con detenimiento los casos que las motivaron es necesario concluir que no son aplicables al presente.

Bajo la teoría que dejamos establecida opinamos que la Corte de Distrito de San Juan tenía jurisdicción para otorgar a Rosa Torrens la autorización a que se refiere la resolución transcrita de 28 de abril de 1902 y que también tuvo

competencia para otorgarla, por el hecho de haberse sometido a ella la expresada señora siendo en su consecuencia válida y eficaz en derecho dicha resolución y en su virtud válida y eficaz la venta hecha por Rosa Torrens a la sociedad J. Ochoa y Hermano por escritura de 18 de marzo de 1904.

Ciertamente que al opinar hoy como opinamos nos apartamos de la resolución dictada en el presente caso en julio 23, 1915, 23 D. P. R. 43, en que por estimar nula la autorización concedida a Rosa Torrens por auto de 28 de abril de 1902 resolvimos ser improcedente la excepción de falta de acción opuesta a la demanda por los demandados, pero la tradicional ley del caso jamás puede justificar un deliberado sacrificio de los principios esenciales de justicia impidiéndonos rectificar el error cometido. Aquella resolución no era una sentencia definitiva. *Great Western Tel. Co. v. Burnham,* 162 U. S. 339.

"Y no entendemos que el principio referente a que una vez dictada una resolución se convierte en la ley establecida del caso sea un principio de acero, incapaz de doblegarse en forma alguna. Pueden surgir casos en los cuales se demuestre claramente que la primera decisión fué errónea; que no solamente se derivará un perjuicio en el caso de autos si se mantiene dicha decisión, sino que también otros intereses en la comunidad habrán de ser perjudicados; de aquí que no dudemos de la facultad de la corte para considerar y revocar una decisión anterior en el mismo caso." *Central Branch Union P. R. Co. v. Shoup Co.,* 28 Kan. 394, 42 Am. Rep. 163.

"En ausencia de todo estatuto sobre el particular, la frase 'ley del caso' aplicada al efecto de órdenes anteriores como última acción de la corte habida en el caso, expresa simplemente la práctica general de las cortes al negarse a abrir a nueva discusión cuestiones que han sido ya resueltas, pero no establece un límite a sus facultades." *Messenger v. Anderson,* 225 U. S. 436, y casos citados.

Pero es que aun sin ir contra nuestra decisión de 23 de julio de 1915, 23 D. P. R. 43, la sentencia apelada se sostendría por el fundamento de haber prescrito la acción ejercitada de acuerdo con el artículo 1858 de dicho código que la corte inferior estimó aplicable al caso y que la parte ape-

lante invoca como infringido por la sentencia de 22 de diciembre de 1915.

Los artículos del Código Civil que regulan la cuestión de prescripción envuelta en el presente caso, son los 1841, 1851, 1853, 1854, 1855 y 1858, que transcribimos a continuación:

"Artículo 1841.—Para la prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley."

"Artículo 1851.—La buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueño de ella, y podía trasmitir su dominio."

"Artículo 1853.—Entiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate."

"Artículo 1854.—El título para la prescripción ha de ser verdadero y válido."

"Artículo 1855.—El justo título debe probarse; no se presume nunca."

"Artículo 1858.—El dominio y demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título."

Como se ve, el Código Civil en su artículo 1858 exige para la adquisición por prescripción del dominio y demás derechos reales sobre bienes inmuebles, buena fe, justo título y posesión por diez años entre presentes y veinte entre ausentes.

En el artículo 1851 define el concepto de la buena fe, el cual consiste en la creencia de que la persona de quien recibió la cosa el poseedor, era dueño de ella y podía transmitir su dominio. Para la buena fe basta la creencia indicada y no es necesario el hecho real y positivo de que la persona de quien el poseedor recibió la cosa fuera en efecto dueño de ella y pudiera transmitir su dominio. Ese concepto de la buena fe concuerda con el artículo 436 aplicable a la prescripción, lo mismo que el 437, por precepto terminante del 1852, cuyo artículo 436 establece que se reputa poseedor de buena fe al que ignora que en su título o modo de adquirir

exista vicio que lo invalide, reputándose poseedor de mala fe al que se halla en el caso contrario. Y según el artículo 437 la buena fe se presume siempre y al que afirma la mala fe de un poseedor corresponde la prueba. De modo que es poseedor de buena fe el que cree que adquirió la cosa de quien era dueño de ella y podía transmitir su dominio, o el que ignora que en su título o modo de adquirir existiera vicio que lo invalidara. Así es que la buena fe es compatible con un título, afectado por un vicio que lo invalide, siempre que se ignore la existencia del vicio por el poseedor o éste crea que no existe.

Por lo que atañe al justo título, por modo expreso dice el artículo 1853 que se entiende por tal el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate. Para que el título sea justo no es necesario que de hecho transfiera el dominio o derecho real sino que sea suficiente para transferirlos, aunque adolezca de un vicio que lo invalide. Y tiene que ser así, porque si bajo el nombre de justo título que la ley exige para la prescripción, viniera comprendido solamente un título adornado de todos los requisitos así internos como externos necesarios para la transmisión real y positiva del dominio, holgaría la prescripción como medio adquisitivo del dominio.

" 'Esto no solamente es lo justo sino que es lo legal,' como ya dijimos al resolver el caso de *Teillard* v. *Teillard,* 18 D. P. R. 568, 'so pena de que queden sin efecto las disposiciones del Código Civil referentes a que por el transcurso de diez años entre presentes y de veinte entre ausentes, se adquiera por prescripción el dominio de las cosas inmuebles poseídas con buena fe y justo título. Si la posesión transmitida mediante una venta, aun así necesitara treinta años para prescribir, holgarían esos preceptos del código y también las muchas decisiones de esta Corte Suprema, dictadas de conformidad con los citados preceptos al resolver apelaciones sobre informaciones de dominio, que están contenidas en mayor número en los tomos 3, 5 y 6 de nuestras decisiones.' "

Y agregamos entonces, invocando la sentencia del Tribunal Supremo de España de 25 de octubre de 1881, que "si

el título nulo no puede dejar de serlo convirtiéndose en válido, las leyes fundadas en razón de conveniencia pública han dado en algunos casos a la posesión una fuerza irrevocable, no por virtud de su causa originaria, sino por el respecto debido a un estado consagrado por el transcurso del tiempo.''

La doctrina expuesta fué ratificada posteriormente en los casos de *Picard* v. *de ·León,* 22 D. P. R. 592, *Arroyo et al.* v. *Bruno et al.,* 23 D. P. R. 814, y *Maldonado* v. *Ramos et al.,* 24 D. P. R. 297.

El Tribunal Supremo de España, en sentencia de 2 de octubre de 1908, al resolver recurso de casación en que se citaban como infringidos los artículos 1950, 1952 y 1953 del Código Civil Español (1851, 1853 y 1854 del Revisado), por haberse estimado bastante para la prescripción ordinaria una escritura de venta de una concesión por un viudo que la había adquirido siendo casado, sosteniéndose que dicho título era nulo e ineficaz para la prescripción, desestimó el recurso por los siguientes motivos:

''1º. Porque la escritura ·de 16 de julio de 1891 es un título justo y perfecto en sus condiciones externas de los establecidos en la ley, para poder transmitir el dominio, y reúne los requisitos exigidos en los artículos 1952 y 1953 del Código Civil, no siendo dable, legalmente, confundir la nulidad que para los efectos de la prescripción pueda afectar a los títulos, por la falta de alguno de aquellos que, según su carácter respectivo, obsten a su estimación en juicio. con la derivada de la naturaleza de los actos realizados y de la capacidad de las personas; 2º. porque siendo presumible siempre la buena fe y consistiendo ésta en la creencia ·de que la persona de quien se recibió la cosa era dueño de ella y podía transmitir su dominio según el artículo 1950, no puede negarse esta condición a las compañías demandadas por la mera particularidad de que el Conde de Locatelli hubiese otorgado la escritura, consignando en ella su estado de viudo, puesto que aparecía como único concesionario y tiene en este concepto el carácter de dueño, aparte de las inconveniencias familiares producidas por la defunción de su esposa ocurrida mes y medio antes del otorgamiento de aquélla, que pudieron haber pasado inadvertidas para los que intervinieron en la constitución de la sociedad, y porque ·para la estimación de una mera creencia a

los efectos de la buena fe no hay que aplicar los principios estrictos de derecho como si se tratara de juzgar acerca de la validez del acto * * *.'' Jurisprudencia Civil, tomo 112, página 39.

El mismo tribunal, en sentencia posterior de 30 de noviembre de 1910, establece ''Que aun en el supuesto de que una escritura no hubiera podido transmitir al comprador la propiedad de los bienes reclamados por la nulidad del título que el vendedor ostentara, si dicha escritura, además de reunir los requisitos externos que la ley requiere constituye por su naturaleza un título traslativo de dominio, es manifiesto que se llenan en ella las condiciones establecidas en los artículos 1952 y 1953 del Código Civil (1853 y 1854 del Revisado), como así lo tiene proclamado esta sala en casos análogos, porque de exigirse que el título invocado transmitiera de hecho y de derecho el dominio de la cosa al comprador, no tendría para qué acudir éste a la prescripción, y este modo de adquirir, por lo que respecta a la prescripción ordinaria, sería superfluo y habría que borrarlo por innecesario e inútil de entre todos los admitidos por nuestra legislación positiva.'' Jurisprudencia Civil, tomo 119, página 486.

En vista de los preceptos legales citados y de la jurisprudencia ya establecida por esta Corte Suprema conforme con la del Tribunal Supremo de España, llegamos a la conclusión de que un título hábil para transferir el dominio, aunque no lo transmita de hecho y de derecho al adquirente por adolecer de un vicio que lo invalida, puede servir para adquirir por medio de la prescripción ordinaria el dominio siempre que concurran los requisitos de buena fe y tiempo de posesión prevenido por la ley, siendo además la posesión en concepto de dueño, pública, pacífica y no interrumpida, según el artículo 1842 del Código Civil Revisado.

Nada arguye contra la anterior conclusión el precepto del artículo 1854, según el cual el título para la prescripción ha de ser verdadero y válido. Al concepto de verdadero en sentido gramatical y legal es opuesto el de falso. Al concepto de válido no podemos dar una significación que borre

de nuestro código el modo de adquirir por prescripción ordinaria, como sucedería si entendiéramos por título válido aquel que llenase todas las condiciones internas y externas exigidas por la ley. Título válido será el que reúna los requisitos que den vida al título y demuestran su existencia prescindiendo de la naturaleza de los actos realizados y de la capacidad de las personas, si nos atenemos a las sentencias del Tribunal Supremo de España de 2 de octubre de 1907 y 30 de noviembre de 1910.

Haciendo aplicación al caso de autos de la doctrina legal que dejamos expuesta, forzoso se hace concluir que la sociedad demandada ha adquirido por prescripción ordinaria los condominios que los demandantes tratan de reivindicar. La escritura de 18 de marzo de 1904 por la que Rosa Torrens en ejercicio de la patria potestad sobre sus menores hijos los demandantes, y con autorización de la Corte de Distrito de San Juan concedida en 28 de abril de 1902, vendió a la sociedad J. Ochoa y Hermano los condominios expresados, es un título justo, verdadero y válido para la prescripción; justo, por ser de compraventa bastante para transferir el dominio, verdadero pues no ha sido argüido de falso; y válido por ser perfecto en sus requisitos externos y aun en las condiciones internas que afectan a su vida y existencia, con arreglo al artículo 1228 del Código Civil, pues hubo materia del contrato, consistente en los condominios que se describen en la demanda, consentimiento que manifiestan J. Ochoa y Hermano por medio de su gestor don Severo Ochoa y los menores por medio de su representante legal, o sea su madre Rosa Torrens que ejercía patria potestad sobre los mismos, y causa del contrato originada por las prestaciones de ambas partes, a saber, traspaso de los condominios y pago de su precio. La falta de autorización por corte competente, afectaría a la modalidad del consentimiento que en la escritura de 18 de marzo de 1904 prestó Rosa Torrens en representación de sus hijos menores, pero no a su esencia; no haría el título inexistente sino anulable, y por tanto

subsistente para la prescripción alegada. La posesión por parte de J. Ochoa y Hermano ha sido de buena fe, pues ésta se presume siempre y las pruebas no demuestran que supiera que en su título o modo de adquirir existía vicio que lo invalidara.

El conocimiento que tuvieran J. Ochoa y Hermano de que Rosa Torrens y sus hijos eran vecinos de Ciales, pueblo correspondiente al distrito judicial de Arecibo y no al de San Juan, dadas todas las circumstancias concurrentes del caso, no destruye la presunción legal de que dicha sociedad haya sido poseedora de buena fe. Y que dicha posesión ha sido en concepto de dueño, pública, pacífica y no interrrumpida, según exige el artículo 1842 del Código Civil, y por más de diez años entre presentes, no es materia a discutir en el presente recurso.

Hemos dejado transcrita la resolución de 28 de abril de 1902 por la que la Corte de Distrito de San Juan concedió a Rosa Torrens autorización para la venta de las participaciones de condominio sobre bienes inmuebles correspondientes a sus menores hijos.

Investida con dicha autorización, de cuya eficacia legal no dudaron ni Rosa Torrens ni J. Ochoa y Hermano, la primera en representación de los menores vendió a J. Ochoa y Hermano por escritura de 18 de marzo de 1904 ante el notario don Herminio Díaz Navarro los condominios de referencia.

La escritura de venta fué inscrita en el Registro de la Propiedad de Arecibo.

Con razón la ilustrada representación de la parte apelada, teniendo en cuenta los antecedentes expuestos, formula la siguiente pregunta: "Si el abogado que dirigió a doña Rosa Torrens y redactó la solicitud creyó proceder correcta y legalmente presentándola al Tribunal de Distrito de San Juan, si el fiscal emitió un dictamen favorable, si los tres jueces que conocieron de dicha solicitud dictaron una resolución de acuerdo con lo solicitado, si el notario que redactó

la escritura y teniendo el documento judicial a la vista no le opuso reparo, si el registrador que hubo de inscribir el título de dominio, no observó ningún vicio que lo invalidara, siendo todos ellos peritos en el conocimiento del derecho y los llamados por la ley a calificar la validez o invalidez de un documento, ¿con qué razón ni con qué derecho se pretende ahora que J. Ochoa y Hermano sea responsable de los vicios o errores cometidos por un tercero y completamente ajenos e independientes de su voluntad? Si los jurisperitos no vieron ni notaron defecto alguno en la autorización judicial concedida a doña Rosa Torrens, ¿cómo se quiere que los viera y notara J. Ochoa y Hermano, profano en la técnica jurídica? No era J. Ochoa y Hermano el llamado a resolver un problema legal de tan difícil solución que exige un análisis profundo de los preceptos legales envueltos en la ameritada autorización, como ha venido a demostrarlo después esta misma corte al rendir su decisión en este punto que acusa un estudio detenido, arduo y complejo de la materia.''

Ciertamente que una corte sin jurisdicción no puede dar autoridad a nadie para enajenar bienes de menores. Pero es que la Corte de Distrito de San Juan tenía jurisdicción para otorgar la autorización aunque como mera hipótesis admitamos que no fuera la competente para otorgarla sino la Corte de Distrito de Arecibo.

Jurisdicción en derecho español que es el que debe regular el presente caso, según el concepto que de ella nos da el ilustrado comentarista Manresa y Navarro en sus comentarios a la Ley de Enjuiciamiento Civil española, es la potestad de que se hallan revestidos los jueces para administrar justicia; y competencia es la facultad que tienen para conocer de ciertos negocios, ya por la naturaleza misma de las cosas o bien por razón de las personas; la primera es el género y la segunda la especie. La jurisdicción emana siempre de la ley directa e inmediatamente; nadie puede ejercerla sin que la ley le haya concedido este poder; sólo tienen jurisdicción, sólo pueden administrar justicia las per-

sonas a quienes les ha sido concedido este poder con arreglo a la ley; más, la competencia del juez para conocer de un negocio, aunque se derive también de la ley, unas veces trae de ella su origen directa, inmediata y exclusivamente, y otras lo tiene de la voluntad de las partes. El primer caso forma la regla general, y el segundo las excepciones. *Garcés v. Franceschi,* 1 S. P. R. 282, *Bayron et al. v. García et al.,* 17 D. P. R. 538. Si la autorización se hubiera concedido por esta Corte Suprema o alguno de sus jueces o por una corte municipal o de paz, o por cualquier funcionario o particular no facultado para administrar justicia, la autorización entonces hubiera sido nula por falta de jurisdicción y bien hubiera podido calificarse de inexistente. Su nulidad no se deriva de falta de jurisdicción sino de falta de competencia por la corte que la otorgó. Jurisdicción y competencia son conceptos distintos, por más que frecuentemente se emplean como sinónimos.

El caso de *Longpré* v. *Díaz,* 237 U. S. 512, no es igual al presente, en que realmente se concedió por una corte de distrito autorización para la venta, la cual tenía la presunción de válida hasta que fué puesta en tela de juicio por la demanda de 5 de junio de 1914, cuando ya se habían llenado todos los requisitos que la ley exige para la prescripción ordinaria adquisitiva del dominio entre presentes.

Por las razones expuestas opinamos que desautorizando nuestra resolución de julio 23, 1915, es de confirmarse la sentencia apelada que dictó la Corte de Distrito de San Juan en 22 de diciembre de 1915, desestimando la demanda, sin especial condenación de costas.

*Confirmada la sentencia apelada.*

Juez concurrente: Sr. Asociado Aldrey.

Los Jueces Sres. Asociados del Toro y Hutchison firmaron conformes con la sentencia, pero sin discutir la excepción de prescripción.

El Juez Asociado Sr. Wolf disintió en la resolución de este caso.