Ex Parte Hipólito Montalvo González, peticionario y apelante.

Núm. 10031.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Noviembre 8, 1949.

Frank Torres, abogado del apelante; Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino, en el alegato), J. Rivera Barreras, Fiscal del Tribunal Supremo y Fernando Fornaris, Jr., Fiscal Auxiliar, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Varios meses después de haber sido nombrado tutor del veterano incapacitado Julio Montalvo González, de haber prestado la fianza y el juramento correspondientes y de haber tomado posesión del cargo, Hipólito Montalvo González, en su referido carácter, acudió ante la Corte de Distrito de Ponce con una solicitud interesando autorización para inver-

tir la suma de $700 depositada en el Banco de Ponce a nombre de su pupilo. Alegó en síntesis que el incapaz y su esposa necesitaban dicha suma para completar el pronto pago a los vendedores de una propiedad inmueble situada en la urbanización Caparra Heights del Municipio de Río Piedras, "todo ello según aparece de la transacción contenida en el contrato privado de compraventa y cesión de derechos y acciones que aparece ampliamente del documento privado fechado en San Juan, Puerto Rico, a 10 de marzo de 1949;" que de esa cantidad $650 serían pagados a los vendedores y los restantes se utilizarían en el pago de honorarios de abogado; y que la inversión es claramente útil y necesaria para el bienestar del incapaz, por sentar la misma las bases para la adquisición de un hogar bueno a un costo total de $11,000 más o menos, pudiendo dicha suma ser amplia y cómodamente satisfecha por el incapacitado y su esposa en un período de 20 años, más o menos.

Celebrada la vista correspondiente con intervención del fiscal del distrito, la corte inferior denegó la solicitud y de la sentencia así dictada apeló el peticionario.

A juicio del apelante la corte a quo cometió error manifiesto (1) al denegar la solicitud; (2) al interpretar los términos específicos del contrato preliminar celebrado por la esposa del incapaz y por éste por conducto de su tutor; (3) al concluir que tal contrato preliminar "era ya un contrato perfeccionado y en ejecución"; (4) al aplicar la doctrina del caso de *F. Zayas, S. en C.* v. *Torres,* 51 D.P.R. 796;(¹) y (5) al declararse sin jurisdicción para conocer del caso, luego de haber dictado sentencia sobre el mismo.

██ No es necesario que discutamos separadamente cada uno de los errores señalados. Bastará decir que en nuestra opinión la sentencia dictada debe ser sostenida. Reiteradamente hemos dicho que la apelación se da contra la sentencia

---

(¹) En ese caso se resolvió entre otras cosas que obligaciones contraídas a nombre de unos menores sin la previa autorización judicial, no pueden convalidarse por una aprobación judicial concedida *a posteriori*.

y no contra los razonamientos de la misma. *Rosario* v. *Suárez,* 67 D.P.R. 589, 592, y casos en él citados. De forma, que aun admitiendo a los fines de la discusión que todos o algunos de los razonamientos que sirven de base a la opinión de la corte inferior están equivocados, ello no es óbice para que la sentencia sea confirmada si la conclusión a que ella llegó es correcta.

██ Se desprende de los autos que en 10 de marzo de 1949, los esposos Manuel Betancourt Rodríguez y María Antonieta Otero, de una parte, y Cándida Doelter y Julio Montalvo González, también casados entre sí y representado este último por su tutor Hipólito Montalvo González, de la otra, suscribieron ante notario público un "Contrato de Compraventa y Cesión de Derechos y Acciones" en relación con la finca que se describe en la solicitud en que se interesa autorización para invertir los ya mencionados $700 del incapaz; que según ese contrato los esposos Betancourt-Otero vendieron, cedieron y traspasaron dicha propiedad a los otros comparecientes por precio de $1,500; que de esa cantidad recibieron los vendedores en el acto del otorgamiento la suma de $850 y que los compradores se comprometieron a satisfacer los $650 restantes *"dentro de un mes más o menos . . . y tan presto la Corte de Distrito de Ponce autorice el desembolso o inversión de los fondos que pertenecen a Julio Montalvo González, y que son administrados por su tutor legal Hipólito Montalvo González,* aclarándose y diciéndose además que si por alguna razón de cualquier índole o naturaleza la corte no autorizara el desembolso de dichos fondos para el pago del remanente, la compareciente compradora, Cándida Doelter hará las gestiones pertinentes para satisfacer dicho remanente a fin de cumplir a cabalidad todos y cada uno de los pactos del presente contrato;" (bastardillas nuestras) obligándose además los adquirentes a satisfacer dos hipotecas que pesaban sobre la finca, la primera de ellas a favor de la Autoridad Federal de Hogares, por $7,800 con intereses al 4 por ciento anual (reducida a la fecha del otorgamiento

del contrato privado a $7,518.89) y la segunda a favor de la Borinquen Home Corporation por $1,263, con intereses al 6 por ciento anual, así como "a cumplir todas las obligaciones y condiciones que les pertenece, cumplir a los vendedores . . . según su título de adquisición . . ." y "a conseguir el consentimiento de los acreedores hipotecarios de la primera y segunda hipoteca". Se desprende además de los autos que la propiedad objeto del contrato preliminar fué adquirida por los vendedores el 14 de febrero de 1948, o sea unos 13 meses antes, en $9,950 y que de acuerdo con la cláusula novena de la escritura de segunda hipoteca suscrita por ellos "los 'deudores hipotecarios' no podrán transferir su obligación de pago ni la hipoteca que garantiza la misma a persona otra alguna sin el consentimiento expreso dado por escrito por la 'acreedora hipotecaria', entendiéndose que si así lo hicieren, la 'acreedora hipotecaria' podrá dar por vencida esta hipoteca y proceder a su cobro por vía de ejecución de hipoteca o en cobro de dólares, según entienda sea mejor a sus intereses." Surge igualmente de los autos que para la fecha en que se acudió a la Corte de Distrito de Ponce con la solicitud de utilidad y necesidad en favor del incapaz, se adeudaba por los esposos vendedores Betancourt-Otero, sobre la segunda hipoteca, por concepto de principal e intereses, la suma total de $295.67, o sea, 14 mensualidades vencidas de $15 cada una, más $85.67 por concepto de intereses desde el 14 de febrero de 1948 hasta el 1 de abril de 1949.

Es innegable que en solicitudes de esta naturaleza lo primordial a ser determinado por una corte es si la transacción es útil y necesaria y, por ende, beneficiosa al incapaz. Para llegar a tal conclusión la corte está plenamente justificada en penetrar en todos los detalles del negocio a realizarse. El caso de autos no constituye una excepción. Por tanto, para poder concluir si la inversión de los $700 en la forma solicitada era útil, necesaria y beneficiosa al incapaz, la corte estaba justificada en investigar minuciosamente la totalidad de la transacción. Dada la prueba que tuvo ante sí, ella

pudo fácilmente concluir que se le pedía autorización para invertir la indicada cantidad en un inmueble a ser adquirido para beneficio del incapaz y su esposa, y que no obstante ello, para la compra de tal propiedad no se había solicitado jamás, ni se le pedía entonces, autorización al efecto, tal cual lo exige el artículo 212, inciso 5, del Código Civil, ed. de 1930.(²)

Además de concluir que en armonía con el contrato preliminar—de concederse autorización para invertir los $700 a que hemos hecho referencia—se celebraría un contrato inscribible,(³) lógicamente pudo darse cuenta la corte de que la propiedad adquirida quedaría gravada con dos hipotecas. Asimismo, de que los intereses del incapaz estarían comprometidos y obligados por un buen número de años por el importe total de las hipotecas y hasta que éstas fueran satisfechas en su integridad, sin que para ello se hubiera solicitado nunca, ni se solicitara de momento autorización alguna.

Por otra parte, igualmente pudo concluir la corte sentenciadora, en ausencia de prueba de que se hubiera obtenido el consentimiento de la segunda acreedora hipotecaria para el traspaso y venta de la finca al incapaz y su esposa, que existía la posibilidad de que efectuada la enajenación los nuevos adquirentes no tuvieran éxito en lograr tal autorización y que en ese caso sobrevendría un pleito que sin duda acarrearía gastos, inconvenientes y trastornos al incapaz.

Finalmente, como sobre la propiedad en cuestión los vendedores debían un número de plazos ya vencidos, así como sus intereses, y nada se decía en la solicitud de utilidad y necesidad respecto a la forma en que dicha deuda sería pa-

---

(²)El artículo 212 del Código Civil, ed. de 1930, provee:

"El tutor necesita autorización de la corte de distrito competente:

"*   *   *   *   *   *   *

"5. Para enajenar o gravar bienes inmuebles que constituyan el capital de los menores o incapaces, *o hacer contrato o actos sujetos a inscripción . . .*" (Bastardillas nuestras).

(³) Véase Manresa, Comentarios al Código Civil Español, vol. 2, ed. de 1944, pág. 434.

gada, la corte inferior también podía inferir que la segunda acreedora hipotecaria podría ejecutar su crédito y ocasionar así al incapaz los perjuicios que conlleva un litigio de tal naturaleza.

Ante todas estas consideraciones, que debieron pesar en el ánimo del juzgador, forzoso es concluir que la corte de distrito, velando por los mejores intereses del incapaz, actuó acertadamente al denegar la solicitud presentádale por el tutor.

■■ En lo que a la falta de jurisdicción concierne, debe admitirse que fué un error de la corte inferior inclinarse a creer que no la tenía, ya que expedientes de esta naturaleza pueden radicarse en cualquier distrito. *Díaz* v. *González y Lugo*, 261 U. S. 102, 67 L. ed. 550; *Agenjo y Santiago et al* v. *Santiago et al.*, 26 D.P.R. 713; *cf. López* v. *Pérez*, 68 D.P. R. 312, 315. No obstante, como a pesar de esas manifestaciones ella asumió jurisdicción y resolvió la solicitud en su méritos, no hay razón alguna para que revoquemos por este motivo.

*Debe confirmarse la sentencia apelada.*