Francisco Capó Pagán, demandante y apelante, *v.* Luce y Compañía, Sociedad en Comandita (Luce and Company, S. en C.), demandada y apelada.

Núm. 9739.—*Sometido:* Marzo 9, 1949. *Resuelto:* Febrero 10, 1950.

*Francisco Capó Pagán, pro se, R. V. Pérez Marchand, R. Hernández Matos* y *Alberto Gerardino,* abogados del apelante; *Sifre, Franceschi & Sifre,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En 1940 Francisco Capó Pagán demandó a Luce & Co., S. en C. solicitando la reivindicación de unos condominios en una finca. Visto el caso en sus méritos, la corte de distrito dictó sentencia a favor de la demandada y el demandante ha apelado.

Los dos primeros errores señalados se refieren a la apreciación que de la prueba hizo la corte inferior. La teoría del demandante es que él es dueño de ciertos condominios en una finca conocida como "Molinari" que aparecen inscritos a su nombre en el Registro de la Propiedad. Sin embargo, la evidencia documental presentada por la demandada establece y la corte inferior resolvió que a fines del Siglo XIX la Sucesión de Pedro Juan Capó Planchard vino a ser dueña, por herencia, de una finca conocida como "Destino"; que luego en 1888 la referida Sucesión compró una finca contigua conocida como "Molinari", insertando en la escritura la siguiente cláusula: "Haciendo constar que la finca de que se trata entra desde luego a formar parte integrante de la hacienda 'Destino' perteneciente a dichos herederos, en cuya forma se hará constar en el Registro de la Propiedad, al tomar razón de la presente escritura;" que desde dicha fecha las dos fincas "Destino" y "Molinari" han sido tratadas en varias escrituras de traspaso, en los planos adheridos a

las mismas, y en otros documentos, por todos los que intervinieron en la cadena de títulos, como refundidas en una sola finca, conocida como "Destino", aun cuando nunca se llevó a cabo agrupación alguna de las dos fincas, de conformidad con la Ley Hipotecaria.

Los documentos de título presentados en evidencia contienen el historial del título de la finca "Destino", incluyendo la agrupación héchale de la "Molinari", hasta llegar aquélla a poder de la demandada. El caso del demandante está predicado en la teoría de que estos documentos de título no tuvieron el efecto de conferir título a la "Molinari". Pero no estaba envuelto tercero alguno. En su consecuencia, en lo que se refiere al demandante (y sus causantes) y la demandada (y sus causantes) "Molinari", como cuestión de derecho civil, si bien no bajo la Ley Hipotecaria, fué refundida con "Destino" y el título a la misma pasó a la demandada en virtud de todas las transacciones mediante las cuales fué transferida. Véanse *Sucn. Fernández* v. *Sucrs. de J. M. Ortiz,* 41 D.P.R. 771; *Blanco* v. *Hernández et al.,* 18 D.P.R. 711; *Quintana Reyes* v. *La Capital de P. R.,* 51 D.P.R. 106; *Pacheco* v. *Plazuela Sugar Co.,* 56 D.P.R. 496; *cf. Olmedo* v. *Balbín,* 69 D.P.R. 588.

■■ Existe un punto argumentado bajo el segundo error que ha llamado nuestra atención. En 1919 la madre del demandante solicitó de la Corte de Distrito de Ponce permiso para vender los condominios representados por 2/8 partes de 1/4 parte del 4.37 por ciento de la agrandada finca "Destino" que el demandante y su hermana, ambos menores, poseían en esa época por herencia. La corte de distrito declaró con lugar esta solicitud, fijando un precio mínimo de $2,500 a estos intereses y ordenando al márshal de la Corte de Distrito de Ponce que los vendiese en pública subasta al mejor postor. Se efectuó la subasta, se aceptó la oferta de la demandada ascendente a $2,833.34 y el márshal otorgó en 1920 la correspondiente escritura ante notario, que fué también firmada por la madre, el demandante y su hermana.

Los terrenos en controversia radican en Santa Isabel, que para dicha época pertenecía al distrito judicial de Guayama y no al de Ponce. *Santos* v. *Sepúlveda, Juez,* 45 D.P.R. 658; *Balbás* v. *Luce & Company, S. en C.,* 47 D.P.R. 936. Por tanto sostiene el demandante que la venta hecha por el márshal de Ponce de los intereses de su hermana y de él, consistentes en 2/8 de 1/4 de 4.37 por ciento de "Destino", era nula.(¹) Descansa en los casos que han resuelto que el márshal de un distrito no puede diligenciar una orden para embargar bienes para asegurar la efectividad de una sentencia o dar cumplimiento a una orden de ejecución, incautándose y vendiendo bienes inmuebles en otro distrito. En dichos casos resolvimos que la actuación del márshal era nula y por consiguiente estaba sujeta a ataque colateral en cualquier momento. *Benet* v. *Hernández,* 22 D.P.R. 348; *Maldonado* v. *Preston,* 22 D.P.R. 659; *Solá* v. *Castro et al.,* 32 D.P.R. 804; *Benítez* v. *Benítez,* 34 D.P.R. 222. En igual forma, hemos resuelto que los bienes inmuebles deben radicar en su propio distrito judicial, para que una corte de distrito tenga jurisdicción sobre la ejecución de una hipoteca sobre los mismos y para que el márshal tenga autoridad para vender los bienes de conformidad con una orden de ejecución. *Blondet* v. *Benítez,* 33 D.P.R. 409.

Las conclusiones a que llegamos en los casos citados en el párrafo anterior fueron obligadas por el lenguaje de nuestros estatutos. Por ejemplo, el artículo 245 del Código de Enjuiciamiento Civil dispone que cuando la orden de ejecución "ordenare la entrega de propiedad real o personal, deberá librarse al márshal del distrito *en que radicare la propiedad, o parte de ella".* (Bastardillas nuestras.) De igual forma, el artículo 170 del Reglamento para la Ejecución de la Ley Hipotecaria y el artículo 75 del Código de Enjuiciamiento Civil expresamente requieren que la ejecución de una hipoteca

---

(¹) El interés actual de la hermana, si alguno, fué adquirido por el demandante poco antes de la radicación de este pleito, por la cantidad de $50.

sobre bienes inmuebles se sustancie en el distrito en que radiquen los bienes. Pero en este caso no está envuelto un embargo, una ejecución o un procedimiento ejecutivo hipotecario. Por tanto no está gobernado el mismo ni por el artículo 245 ni por los artículos 170 y 75. Por el contrario, lo gobiernan los términos específicos de los siguientes: (1) artículos 80–82 de la Ley relativa a Procedimientos Legales Especiales, hallada en el artículo 614–616 del Código de Enjuiciamiento Civil; (2) artículo 159 del Código Civil, ed. de 1930.

El artículo 159 del Código Civil provee que las enajenaciones de bienes inmuebles pertenecientes a menores no se llevarán a cabo "sin previa autorización de la corte de distrito en que los bienes radiquen". No obstante los aparentemente absolutos términos del artículo 159, un padre con patria potestad puede conferirle jurisdicción a una corte de distrito donde no radican los bienes, presentando ante ella una petición solicitando permiso para venderlos. Esta última doctrina está firmemente establecida en esta jurisdicción. Nuestros casos han predicado esta conclusión en las disposiciones *generales* de los artículos 76 y 77 del Código de Enjuiciamiento Civil, que permiten a *las partes* celebrar convenios de sumisión de jurisdicción. Se llegó a este resultado a pesar de (1) la disposición *específica* del artículo 159 del Código Civil frente a las disposiciones meramente generales de los artículos 76 y 77 y de (2) la duda de que los artículos 76 y 77 sean aplicables a un procedimiento *ex parte*. *Díaz v. González,* 261 U. S. 102; *Ex parte Montalvo,* 70 D.P.R. 462, 468; *Martorell et al.* v. *J. Ochoa & Hno. et al.,* 26 D.P.R. 689; *Agenjo y Santiago et al.* v. *Santiago et al.,* 26 D.P.R. 713; *González et al.* v. *Benítez et al.,* 27 D.P.R. 394.

Según indicamos más arriba, este procedimiento está gobernado por los artículos 159 del Código Civil y 80–82 de la Ley relativa a Procedimientos Legales Especiales. Como hemos visto, bajo el artículo 159, según lo ha interpretado nuestra jurisprudencia, una corte de distrito tiene jurisdicción sobre una solicitud para vender terrenos pertenecientes

a un menor, que radiquen fuera de su distrito. Pasemos ahora a determinar el significado de los artículos 80–82. Éstos proveen el procedimiento para llevar a cabo tales ventas. En consecuencia dichos artículos deben leerse conjuntamente con el artículo 159.(²) Pero hay que recordar que al leer el artículo 159 y los artículos 80–82 conjuntamente, debemos leer el artículo 159 no de acuerdo con sus términos propiamente dichos, sino tal como nuestra jurisprudencia lo ha interpretado.

El artículo 80 dispone que la solicitud para la venta de bienes de menores será presentada "a la competente corte de distrito. . ." Los artículos 81 y 82 proveen que la venta será autorizada y el alcance de la sentencia será fijado por "el juez". A la luz del artículo 159 según lo interpreta nuestra jurisprudencia, es obvio que "el juez" puede, como en éste caso, ser un juez de un distrito distinto a aquél en que radican los bienes. En verdad, el apelante nada alega en contrario. Por consiguiente, la controversia se reduce a determinar el significado del segundo párrafo del artículo 82.

El segundo párrafo del artículo 82 provee en parte que "la subasta. . . deberá verificarse ante el márshal *del distrito,* previa publicación de los edictos correspondientes en los sitios de costumbre y en algún periódico de circulación en el distrito . . .". (Bastardillas nuestras.)(³) Es importante indicar que este lenguaje es distinto a las disposiciones estatutarias relativas a ejecuciones, embargos y ejecutivos hipotecarios. No contiene el mismo un mandato expreso como en aquellos casos al efecto de que el márshal debe ser el márshal del distrito en que radiquen los bienes. Además,

---

(²) El que los artículos 159 y 80–82 deben leerse conjuntamente, se torna aún más claro al notar que cuando dichos tres artículos fueron enmendados para que leyesen, sobre el punto ante nuestra consideración, según leen hoy día, la Legislatura hizo la enmienda de los tres en una misma ley. Ley núm. 33, Leyes de Puerto Rico, 1911 (pág. 126).

(³) Recientemente hemos reafirmado nuestra conclusión de que este lenguaje significa que el márshal otorgará la escritura de venta. *Lólpez* v. *Sotelo,* 70 D.P.R. 501, 509.

bajo el artículo 159, según lo hemos interpretado, la Corte de Distrito de Ponce tenía jurisdicción para ordenar la venta de bienes radicados, como ocurre aquí, en otro distrito. Y esto es así, no empece el mandato específico del artículo 159 del Código Civil al efecto de que tales enajenaciones no se llevarán a cabo "sin previa autorización de la corte de distrito en que los bienes radiquen". En consecuencia, no vemos por qué tengamos que resolver que el márshal de Ponce no pueda dar cumplimiento a la resolución de la corte ordenando la venta, particularmente toda vez que el artículo 82, aplicable a tales ventas, contrario al artículo 159, no tiene disposición alguna prohibiéndole bien a la corte así ordenarlo o al márshal cumplimentar la orden de la corte.

Reconocemos la fuerza del argumento de que un vendedor tiene más oportunidad de recibir un mejor precio si los bienes inmuebles se ofrecen a la venta en la localidad donde radican. Pero incumbía a la madre que representaba a los menores hacer la elección. Ella tenía derecho a someterse a la jurisdicción de la Corte de Distrito de Ponce y así lo hizo. En verdad, quizá en esa época ella pensó que la propiedad en el área de Guayama tenía un precio de venta mayor en Ponce que en el sitio donde radicaba. De cualquier modo, habiendo solicitado de la corte de Ponce que actuara y habiendo con ello conferido jurisdicción a la misma, la madre—y posteriormente los hijos—no pueden ahora quejarse de que la corte hizo uso de su propio márshal, cosa que no prohibe el artículo 82, para cumplimentar la orden de venta que la corte dictó a solicitud de la madre. Ésta aceptó el precio de venta, que era mayor que el precio mínimo fijado en la orden, y se unió al márshal y a los menores al otorgar la escritura de venta sin levantar esta objeción tan técnica. No podemos ver cómo pueden ahora los hijos alegar, veinte años después, que una venta judicial hecha en estas circunstancias, es enteramente nula.

Cierto es que en algunos de nuestros primeros casos empleamos lenguaje abarcador al efecto de que "un márshal no

tiene autoridad alguna o facultad para vender propiedad que está fuera de los límites geográficos de su propio distrito.'' *Benítez* v. *Benítez,* supra, pág. 227. Pero dicho lenguaje debe leerse en su contexto. En estos casos considerábamos embargos, autos de ejecución o procedimientos de ejecución de hipoteca. En todos ellos, como hemos visto, nuestros estatutos específicamente prohibían tal proceder, excepto por el márshal del distrito donde radican los bienes. Pero como también hemos visto, a tenor con nuestros casos un padre con patria potestad que solicita autoridad para vender bienes inmuebles pertenecientes a menores puede voluntariamente someter tales bienes, radicados fuera de su distrito, a la jurisdicción de determinada corte de distrito, no obstante las disposiciones del artículo 159 del Código Civil; y nada de lo preceptuado en el artículo 82 prohibe a tal corte utilizar a su propio márshal para llevar a cabo tal venta.

Ningún caso hemos encontrado en ésta o en cualquier otra jurisdicción que resuelva que una venta por un márshal bajo las circunstancias de este caso sea nula. Y no estamos inclinados a establecer por vez primera una doctrina técnica y dura que no cumple propósito práctico alguno. Véanse *Menard* v. *McDonald,* 115 S. W. 63 (Tex., 1909); *Dabney* v. *Manning,* 17 Am. Dec. 597 (Ohio, 1828); *cf. Fernández & Bros.* v. *Ojeda,* 266 U. S. 144; *Hine* v. *Morse,* 218 U. S. 493.

El tercer señalamiento es que la corte inferior cometió error al permitirle a la demandada enmendar su contestación para adicionarle dos defensas el último día del juicio, violando en esta forma el convenio hecho durante la conferencia anterior al juicio. No podemos convenir en que la corte inferior abusara de su discreción al permitir esto. Los errores cuarto y quinto, relacionados con los frutos y los daños triples, se tornan académicos en vista del resultado a que hemos llegado en cuanto a los dos primeros errores.

*La sentencia de la corte de distrito será confirmada.*