Mr Justice StgRY
 

 delivered the opinion of the Court.
 

 This is an appeal from a decree of the circuit coürt of the Kentucky district.
 

 The Bank, of the United States, at Lexington, I&ntucky, on the 3d of July 1819, discounted a note of the samé date for f4700, signed By one George Norten, payable sixty days; afterdate, to one Daniel Halstead or order, and by him indorsed to Abraham Venable, and subsequently and severally indorsed by William Adams and'Joshua Norten, .anck by the latter to the bank. The note was not paid at maturity, and due diligence having been used tá obtain the amount from the maker,’ according, to the local law; a-, spit in. equity was brought in the circuit court in November .1821^ against all the indorsers (as is course by the local law), in which .a decree for principal, interest and costs .was rendered" in May: 1822. An execution issued, upon-this decree against-the parties, upon which a tract of land of.200 acres, a tracfc.of 113‘acres, several negroes, and some-other personal’property of Venable, were levied On, but the .same were not sold-; the former for want Of "proper bidders, the..Iaftef on account of a claim set up' to the same, by" the .defendant, George MDonald.
 

 The present bill, after stating these facts, charges that On the 9th of February 1822, Venable made two . de.eds to M’Donald, by which he conVéyéd.lhe tracts of land and Other property to M’Donald, and that the sanie deeds were colour
 
 *111
 
 able and fraudulent; and the prayer of the bill is that the deeds may be declared fraudulent, and the property may be decreed to be sold; and an injunction granted in the mean time, and for further relief.
 

 The answers of the defendants, M’Dcnald and. Venable, deny that the deeds of the 9th of February 1822, were co-lourable or fraudulent, and on the - contrary, assert them to have.been bona fide, and for a valuable consideration.. The answer of M’Donald further sets up a mortgage executed by Venable on the 22d of May 1820, to him, McDonald, and one Gjeorge Nórten, (who is not a party to the bill), of a tract of land of about 245 acres (part of the land in controversy), and of mine negroes (including those in controversy),, to secure .them against a bend' executed by them as sureties, with Venable as-principal, upon his appointment as. guardian of the infant children of George Adams deceased, whose mother Venable had since married, she having previously adminis-. tered upon Adams’s estate. The guardianship, bond was in the penal sum of $4000, and upon the.ushal condition.
 

 The cause being put at issue, upon the final hearing, the court decreed the deeds of the 9th of February 1822, to-be eolóurable and fraudulent, and ordered, the same'to be set aside and annulled; and, that the plaintiffs might pursue their judgment and execution against the real and personal estate of Venablé, as if the said deeds had never been made; subject however to the mortgage aforesaid,
 
 which was not in any mdnmr whatever to he affected by this decree.
 

 It is upon an appeal taken by Venable and M’Donald to this decree, that the cause is now before this Court; and independently of the merits as to the asserted fraud, or good faith of the déeds of ,1822, two objections have been raade by the counsel for the appellants.
 

 The first is, that'the court erred,in .directing a sale of the estate conveyed tó M’Donald and Norten, until their mortgage was satisfied, or the condition thereof performed; because it had no right to change, by sale of the estáte, the rights or interests-of the mortgagees under a conveyance admitted to be valid, unless by,their consent.. This objection is founded upon a misinterpretation, of the decree, which
 
 *112
 
 does not.authorize any sale to be made by virtue of .it, but merely removes out of the way the deeds which obstructed a sale at law under the judgment.and levy. The decree also leaves the mortgage wholly untouched, and consequently no sale could prejudice the rights appertaining to its.
 

 - ■ The next objection is, that George Norten, the mortgagee, is not made a party to the bill. But this objection falls for the same reason as the preceding. As the mortgage is not in any measure interfered with by the decree, it is wholly unnecessary to make Norten a party to the bill. He has no interests which até controverted or injured„by declaring the nullity of the other deeds..
 

 The real question then is, whether the deeds of 1822 are fraudulent or not; and to that question the consideration of the Court will now be addressed. The answers of the defendants, having denied all fraud, those answers aré entitled to stand, unless they are overcome by the testimony, of two witnesses, or of one witness and circumstances.
 

 One of the deeds purports, for the consideration of ‡.6260 paid and secured to be paid, to convey to M’Donald the two ' tracts of land; the other, for the consideration of $3400, to convey certain, slaves, household furniture, horses, wagons, hogs, sheep, cattle, &.c. and other stock usually belonging to a farm. The bill charges that these constituted the whole estate of Venable; and this fact is not attempted to be denied in the answer. Except his liability as guardian, and as indorser of the note to the "bank, it does not'appear that Venable, was at this time indebted to any persons whatever; the fact is cliárged in the bill, that he was not under any embarrassment, and it is supported by the proofs.
 

 Here then is the case of a person upon the eve of a decree being rendered against him for a large sum of money, which it is admitted would go far to his ruin-, making conveyances of his whole property real and personal to his brother-indaw, for an assérted consideration equal to its full value. The brother-in-law is proved to be a thrifty, industrious man, but not at the time known to possess property sufficient to pay the purchase money; having Other pursuits; and as soon as.
 
 *113
 
 ’¿he purchase is' made,.suffering the éstate to remain in possession of the former tenant.
 

 How arid in what manner, is the-, consideration pa - or. received1? M’Donald in his answer states that Venable, .under the administration-of his-wife on -Adams’s estáte, and his own guardianship of her infant' children, was indebted tor. assets received to the amouftt of
 
 ‡6286 54;
 
 and. that he, M’Donald, finding that Venable had used this money and was wasting the estate of'his wards, and-was involved in difficulties by his suretyship' for others, &-c, with a view to his:oWri safety -and that of George Norten (who is now insolvent), first tool, the mortgage, and afterwards being fearful of the Waste of. the estate, Was induced to purchase it, th'afhe might have the control-of it, and accordingly he did purchase' it. . The manner in which the consideration was . paid arid secured, he -states to have been as follows. He assumed by a written contract given to Venable, to pay. the debt due by Venable to his Wards, when they came of age, and in the mean time to pay annually a sufficient sum for their maintenance and support» to be allowed in extinguishment of the interest that might become
 
 interrtiediately
 
 due. The contract itself is now produced, and it contains an agreement to pay to the wards, not a specific sum of money, but “ as much money as they shall have a right to demand of Venable, as guardian, when they become of age.” It further contains a, promise to furnish Venable “ as much beef, pork, hay, corn, flour, &c. to the amount of what it shall be worthy to board, school and clothe” his wards.
 

 The residue of the consideration for the purchase, viz. ‡206.0 50 cents, M’Donald asserts to have been paid by him in money to Venable, part of which he admits that he borrowed, but he does not state how much. By the contract above stated, he. was to pay the money within three months after the purchase.
 

 Such is the nature of the purchase, and the consideration as disclosed in the answer of M’Donald, and which Venable in his .own answer adopts and supports.
 

 The first remark that arises on-this part of the caséis, that the whole consideration stated la. the deeds is $9660;
 
 *114
 
 and that the answers state the amount actually paid or secured as no more than $S3-l-7. This discrepancy is utterly unaccounted for. In the next place, the debt assumed to be due by Venable to his wards, is no where established to. have been really due by any proofs in the record. ' Now,- this was a material fact in the case, exclusively within the knowledge and power of the defendants, which they were bound to establish by .competent.evidence, and which, in its own nature, was susceptible of proof be-, yond their answers. It was Vital to the good faith of the transaction. “ The omission to do it, would, pf itself, throw some doubt upon the transaction- But the proof in the record, . so far as it- goes, affords a strong negative upon the assumed debt. The inventory of George Adaths’s personal' estate ife only
 
 $2032
 
 7. cents. His widow (independently ' of the charges of administration) was entitled to one third part of ft. . One-of the children (a daughter) died early,' during her minority ; and without. stopping to inquire,. • whether her share in the personalty would, not fall to the mother, the remaining sum, deducting only the mother’s .third, left the sum of
 
 $1355
 
 only as the distributable .shares, of Venable’s wards. There is in- the record a paper which is without any signature or-proof of any. sort, which puts Adams’s
 
 personal
 
 estate at. a much lower sum than the inventory, but which, by adding his real estate at $2200, and the rent for three years, and the hire of negroes and. interest,'stVe'Ils the aggregate of his estate to $6286 54 cents. This paper can be viewed in no other light than a mere speculative statement; but if it were otherwise, it is obvious that it Cannot.be permitted to pass as proof-of the balance then due to Adams’s children.
 

 In the first place, the real estate ismot properly chargeable to the account of the administrator or guardian merely as such.
 

 The- suggestion is that it was afterwards sold ánd the proceeds received by Venable, for which he may be justly held accountable. There was no sale made, so far at least as we have any evidence, under the general act of Kentucky on this subject, passed on the third of February. 1813, and therefore that may be laid out of the question; though it is
 
 *115
 
 observable, , that a guardian is not authorised uri,der that act to sell wjthout an order of court, and. giving a bond with sufficient sureties: The only proof of any authority to sell found in the record is, the following order:
 
 “
 
 Fayette county, :to «fit, April court,.-1818. On motion of Abraham Venable,„i*atterSan Bain, E. Yieser, and Charles Humphreys are appointed commissioners* under the act of assembly of the last session, for- the sale of the estate mentioned in said law, as-belonging to the heirs of George Adams deceaseds situated in Lexipgton.” The act here referred to is not in the record, but so far as we can gather its contents by the order itself, the, commissioners, and not the .guardian were authorised to make the sale. . Their proceedings under the order do .notappear. The Only evidence is from a .purchaser at the sale, -who states that he bought the estate at about
 
 $2200,
 
 and, with the exception of about $300, he paid the money to Venable by direction of the commissioners..' Whether this payment was authorised by the act is left, uncertain;’and indeed whether security was not directed to be taken from the commissioners on the sale, as in ordinary cases. -It is far from being certain that the sureties on Venable’s guardianship bond were liable for the sum so received. But we may assume for the present-that they were.
 

 - Then, there is a charge of $900 for. rent received upon the real estate for three years; and for hire of negroes for seven years
 
 $490,
 
 -although the inventory mentions only “one negro girl and child, valued at’$300; and to complete the amount, a charge of. interest is added on the whole, of $1171 98 cents. Now, certainly, there is no pre-tence for the last charge, and no justification of it by any proof.. The children were maintained during this whole period by Venable and his wife; and ip the most favourable view, if Adams’s estate had been, completely settled, the interest and income from the children’s shares of his whole estate could not be presumed to amount, to more than, if to. so. much as, the reasonable expenses for their support and maintenance.' At least, -if they did, that fact should have been» made out by some probable evidence; -Then, again, the guardianship bond -is- in the penalty of $4000
 
 *116
 
 only; and this circumstance discredits - the supposition* that the sureties had incurred any liability beyond'that .amount. The usual practice is to take the penalty in double the amount t>f the supposed value of the property -in-fended to be secured by it. The original- administration bond of Mrs Venable was in the penalty of only $600$,• and the inventory of personal estate of George Adams, made .by her on oath, which is not attempted tobe impugned, covers .but one third of that amount Tt has been sakhat the bar, that by the lawsfof Kentucky, sureties-may be charged beyond the penalty of ¡their, bonds, and to the same, extént of liability as their,principals. If this were so it would diminish the force of any argument grounded on the penalty; though, it eertainly would .not establish that there was ip fact a debt due to the children ■ beyopd that sum. But among the acts of Kentucky,'-we cannot find any statute that leads to such a conclusion.. The .act of 23d. January 1810,. concerning the bonds of certain officers,, guardians, administrators and exfecutó'Fs, has -no provision, which-varies from the general , law on this subject', limiting the responsibility of sureties to the penalty of the -bond-. It f -^ely,de-clares that
 
 “
 
 an action in one case on such bond shall , in no wise abate or bar an action thereon for another cause,” which is entirely consistent with a recognition of the general rule of law. And the act .of 15th January 1,811, which is supplementary to the former; and gives a remedy against sureties beyond the penalty of the bond, is expressly,limited to bonds given by
 
 ■public officers.
 
 No adjudged case has been cited, which goes to establish the. position, that the statute of 1810 has been* differently construed by the state courts. It is not in our view of the facts a very material consideration, because there is no evidence offered, which proves that a debt was due to Venable’s wards, even to the amount-of the penalty. And in a case like the-present, it was indispensable for the defendants to make out so material a fact.with all due certainty.- The Court, cannot presume it. The statement already alluded to, as a statement of the administration or guardianship account, contains no deductions whatever, either- for charges, taxes,, .rer
 
 *117
 
 pairs, or even for debts due from the intestate, or for expenses incurred for the children. It assumes" only one side of the* account, and deals not in any credits, though the presumption of their existence, is almost irresistible. -
 

 In respect then to this part of the assumed'consideration of the deeds, there is the want of certainty as to any amount" of debt due to the children.; and thé’contract given to secure to Venable, does not ascertain any amount as due. It merely provides- in general terms that M’Donald shall pay. to the children'“ as
 
 much
 
 money-as they shall have a right to demand,” &c; when they shall come,of age, and in the inter.mediate time they are to receive an amount sufficient for their support and maintenance. Even this contract- is left wholly without any mortgage' or .other security for its fulfilment, either to Venable or to the children; and Venable strips himself of his whole estate, and relies exclusively upon . the good faith and solvency of M’Donald, to extricate himself from all future difficulties. Such a case may exist;. but it must involve some suspicion, when the party who resorts to such measures, has a demand hanging over him, which goes deeply to affect his solvency and his interests, and may . furnish another and cogent motive for the transaction.
 

 The provision in this contract for the support and mainr teriance of the children, is somewhat extraordinary, and of a very indefinite nature and extent. , M’Donald agrees to deliver to Venable “
 
 as
 
 much.beef,, pork, hay, corn, flour, &c. to the amount
 
 of what it.shall be worth,
 
 to board, school, and clothe” them. So that, évén the amount is -not fixed, and is to depend upon the future pleasure of the narties., In case of a real purchase, such a provision could not-be expected', even though it went merely to keep down the accruing interest ; and in the present case, it is not by its terms confined even.within that limit. The contract itself is not avowed upon the face of the deeds, and must be deemed a mere private and secret bargain, to be kept back by the parties.
 

 Then, again,as to the remaining cash payment of $206Q 50 cents. The bill directly charges that it was a mere formal payment,- and that the “ money was by the said Venable re
 
 *118
 
 turned back to M’Donald, or to the person of whom M’Donald borrowed it.” The answer of M’Donald admits that a part was borrowed; but his deniál of its return is couched in terms of an ambiguous purport. He says that the sum of $2060 50 cents “ was paid by this defendant in the presence of Moses S. Hall,” &c. That he “ borrowed a portion of the money to enable him to mpke the cash payment. That it was paid by him. to his co-defendant (Venable) in good faith, and that ho part of it was returned to him
 
 by said Venable,
 
 nor did this defendant receive any part of said money back from said Venable
 
 by any fraudulent contrivance,
 
 as the complainants have falsely alleged.” Venable in his answer says, " that the said sum of money was paid to him by his co-defendant (M’Donald)
 
 in good faith,
 
 and that . no part of it was returned
 
 by him
 
 to his co-defendant.” Now it is remarkable, that neither of these answers, in terms, denies that the money so borrowed was returned back to the person of whom it was. borrowed, which, is the gist of the charge in the bill; nor does M’Donald deny that he. received it back; but only that it was not returned to him
 
 by Venable.
 
 Nor are these allegations thus loose, from mere accident or carelessness. On the contrary, the prpof is direct, that the money borrowed was returned to M’Donald, and was by him returned to the lender: Moses Si Hall, in his testimony, says he was present when the money was paid, and it was handed
 
 to Mrs Venable.
 
 William Achison testifies that M’Donald told him that the next morning after the money was paid, Mrs Venable was at his house with the money, on her way to town to deposit it in bank, and he, M’Donald, borrowed it of her and returned it to Hendley (the lender) the same day. Hendley himself, in his testimony, says,, “M’Donald came to me and told me that he had made a purchase; that I was a man of tolerable good sense,
 
 I could ■tell by a littie, what a good deal meant.;
 
 and observed that he wished to borrow' of me $1000, which I loaned him, and
 
 stated he would return it in a few days.
 
 He observed that Venable was
 
 embarrassed by a debt on account of Norten, and that he had' bought him out of every species of property,
 
 .and that he wanted the money to pay him. He also offered
 
 *119
 
 me a mortgage on a negro man and a tract of land for the payment of the money, but I declined receiving any security, &e. because I expected to receive the money back in a few days. I took
 
 a
 
 memorandum of the amount and numbers'of the differenf notes ioahed him,
 
 thinking it was possible i should receive the same notes back,
 
 &c.
 
 In about three or. four days 1 received from, said McDonald the same notes back again.
 
 M’Donald stated to
 
 riA,
 
 that he was security for Venable, as guardian of Mrs Veriable’s children, to the amount of $3000 or $4000,, and that he made this purchase to secure himself.” In point of fact, independently of the purchase, as we have already seen, he had a mortgage on the same estate as security for that very liability. . But it is impossible to wink so hard, as. not to perceive, that if this, statement be true, and it is no where contradicted or denied, the borrowing of the money was merely to exhibit before witnesses a formal payment, and that there was no real bona fides in this part of the transaction. It was an attempt, fruitless, as the event hás shown, to throw a colourable gloss over the real transaction.
 

 How thb other part of the purchase money was obtained, is not proved by the defendants, although there is some hearsay evidence that other money was borrowed;, but rth¿ answers of the defendants furnish no statement of the amount.
 

 There is also testimony in the case from several'witnesses, of the confessions of Venable, as to the object of the deedsj and of subsequent acts of control over the estate to some extent, from which unfavourable inferences have been deduced at the argument' against^the validity of the deeds. It has been said at the bar, that these confessions and acts, being subsequent to the execution of the deeds, ought not , to be permitted to prejudice the title of M’Donald, and are not evidence to bind. him. It is true, that neither the acts nor confessions of a grantor, under such circumstances, are admissible to defeat the title-of the grantee. But they are certainly admissible to disprove the answer of the grantor., when he is a party to the bill.- If-they discredit his answer, they withdraw from the case all the influence which his concurrence in the statement of the grantee would otherwise
 
 *120
 
 have;.and to this extent they have a bearing upon the whole merits of the case; but not beyond it. Upon examination of these confessions, they certainly exhibit some misgivings bn the part of Venable, and some propf, that the sale of the estate.was. to defeat the debt due by him to the bank, as security of Norten. The acts of control by Venable over the estate are- more equivo'cal4; anct but for his subsequent liberal participation in all the^roducó of the estate, would, perhaps of themselves, noi.be very significant. As the case is, they cannot but have some weight.
 

 Upon tire whole, without going more at large into - the case, tl)e circumstances are such, that it appears to us these deeds',were not bona fide and for a valuable consideration, and therefore they were properly, set aside by the circuit, court. Looking to the nature of the transaction, the assumed confederations, the relation and circumstances of the parties, the impending decree, the sweeping extent of the deeds, the' non-disclosure, on the face of them, of the real consider-? ations, the objects of the collateral and.secret contract; the very great doubt.as to what was due to the children, and the ambiguous explanations of the parties; we think the presumptions are so strong against the validity of the deeds, that they ought not to-be supported.
 

 The decree of the circuit court is affirmed, with costs.
 

 •This cause cáme on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, it is considered, ordered and decreed by this Court,, that the decree of the said circuit court in this cause be, and the same, is hereby , affirmed, with costs.