**Roque, Domingo Juan and Maria Mercedes PEREZ–CRUZ, et al., Plaintiffs,**

v.

**The ESTATE OF Manuel FERNANDEZ–MARTINEZ, et al., Defendants.**

**Civ. 78–2469CC.**

United States District Court, D. Puerto Rico.

Oct. 6, 1986.

A.J. Amadeo-Murga, Hato Rey, Puerto Rico, for plaintiffs.

José Antonio Luiña, Fernández Juncos, Santurce, Puerto Rico, for codefendant Litheda Apartments, Inc.

Vicente Santori Coll, José A. Fuentes-Agostini, Harry B. Llenza, San Juan, Puerto Rico, for the Estate of Manuel Fernandez Martinez.

Laffitte, Dominguez & Totti, Hato Rey, Puerto Rico, for the Estate of Antonio Mongil Portell and Aracelis Suarez.

Eugenio Otero Silva, Doval Muñoz Acevedo Otero & Trias, Osvaldo Carlo Linares, Asst. U.S. Atty., San Juan, Puerto Rico, William French Smith, U.S. Atty. Gen., Washington, D.C., for U.S. of America.

## OPINION AND ORDER

CEREZO, District Judge.

At the pretrial conference held on October 5, 1984 codefendant United States of America argued that the trial to be held three months from that date[1] should not be limited to those issues pending in the local court at the time of removal of this action and that all other issues already decided by that court should be relitigated before this forum. Its position, more extensively discussed in its memorandum, is that since the United States was an indispensable party to this action since 1961 when it acquired an interest in the property being revendicated, as insuror of a mortgage on the property, or, since 1966, when it became subrogated in the mortgagee's rights, any orders of the Commonwealth court issued before its joinder are not binding upon it. The United States goes even further. It contends that it has been so prejudiced by the lapse of time that it cannot now relitigate the issues decided by those orders and, therefore, the action against it should be dismissed.

The United States' arguments are principally aimed at a 1963 resolution of the Superior Court of Puerto Rico, San Juan Part, affirmed by the Supreme Court of Puerto Rico in *Fernández-Martinez v. Superior Court,* 89 D.P.R. 754, 89 P.R.R. 737 (1964), where it was held that the judgment by default entered in Civil Case 2852 on November 14, 1932 against plaintiffs and in favor of Manuel Fernández-Martinez, the basis for the latter's title to the property and of his successors in title, was voidable because it was unlawfully entered by the Clerk of the Court against an incompetent defendant and two minor defendants and void "ab initio" for the Clerk lacked authority to enter a default judgment which was clearly for an uncertain sum since neither the incompetent mother nor her minor children could have accepted the sums requested in the complaint. The other orders of the local court, which antedate the joinder of the United States, were issued prior to its acquiring any interest in the property, were favorable to its mortgagor (codefendant Litheda Apartments, Inc.) and, consequently, to the interests of the United States,[2] or have been reconsidered by this

---

1. Due to conflicts with the Court's calendar of criminal cases and the late submission by all parties of motions for summary judgment, however, the trial was not held. Disposition of the motions is made separately.

2. See *Pérez-Cruz v. Fernández,* 101 D.P.R. 365, Official Translations of the Opinions of the Supreme Court of Puerto Rico, vol. 1, p. 508 (1973). Although this decision may be termed prejudicial to the United States insofar as it asserts that in cases of double recording the provisions of Article 34 of the former Mortgage Law, 30 LPRA section 59, now Article 105 of the Mortgage Law, 30 LPRA section 2355, on which Litheda had relied to attempt to obtain a judgment in its favor, are inapplicable, such was the state of the law before the United States acquired its interest. 101 D.P.R., 371, n. 6, Official Translations, pp. 518–519, n. 6. The decision was favorable to Litheda and thus to the United States in that it reversed the summary judgment against Litheda and allowed that party to withdraw admissions by failure to answer requests

court and are, therefore, not the object of this order.[3]

Plaintiffs aver that since the United States had knowledge of this action and has actively defended against it, together with codefendant Litheda Apartments, the Superior Court's decisions against the mortgagor should bind the United States.[4]

We must again remind all concerned that this is a multi-claim, multi-party suit which began *thirty-nine years ago* as a two-claim suit against a single defendant, Manuel Fernández-Martínez, to declare void the judgment entered in Civil 2852 and the public sale of their property and order the return of the property to the plaintiffs. As slow progress was made through discovery methods, and through chance, to ascertain the identity of more current owners of the property subject of the original cause, other defendants were joined and new causes of action were filed against these defendants.[5] These claims, for recovery of property wrongfully transferred to the addition-al defendants and to nullify any recordings made in their favor, were contingent upon the results of plaintiffs' original cause of action against codefendent Fernández-Martínez. It was this original cause of action which the Superior Court finally decided in its 1963 resolution.

■ As stated before, the United States contends that it was an indispensable party to this 1963 determination. At the time, however, the United States' interest was merely that of an insuror of a mortgage upon the property subject of the action and it could not have been named a party to the action under the conditions of 28 U.S.C. section 2410. See *Haggard v. Lancaster*, 320 F.Supp. 1252, 1254–1255 (N.D.Miss. 1970). Although the Secretary could have intervened as of right in the local court proceedings if it had known of their existence,[6] 12 U.S.C. section 1702, Rule 21.1 of the Rules of Civil Procedure of Puerto Rico, cf. *Ready Mix Concrete, Inc. v.*

of admissions submitted, which, given the fact that the Article 34 defense was not available, were fatal to Litheda's case.

3. See Memorandum Opinion and Order of October 26, 1982.

4. At the pretrial conference held before the undersigned, plaintiffs' attorney expressed that he had no objection to relitigating those issues and that, in his opinion, the United States would not be prejudiced by this. This statement was made during the heat of argument at the pretrial conference where multiple issues were discussed and without the consent or knowledge of the plaintiffs. It was not raised again in plaintiffs' opposition to the United States' memorandum on this matter. Since this statement can substantially prejudice plaintiffs' rights, we have not held it against them. Cf. *Sea-Land Service, Inc. v. R.V. D'Alfonso, Co.*, 727 F.2d 1, 4 (1st Cir.1984) (Campbell, Ch.J., dissenting) (attorney could not waive statute of limitations without his client's consent) (quoting Canon 7 of the Rules of Professional Responsibility, as supplemented by Ethical Consideration 7–7). We note also that such a course of action, namely the relitigation of issues disposed of since 1963, runs counter to basic concerns of judicial economy, particularly applicable to this case.

5. In June 1947 and September 1948 plaintiffs moved to join defendant Antonio Mongil-Portell who, according to the answer to the original complaint, had acquired the property from the original defendant. The amended complaint was ordered filed on January 24, 1949. Default was entered against this defendant on July 22, 1949. After a second amended complaint was filed, on May 7, 1954 codefendant Mongil-Portell answered the complaint by denying all its allegations. Nonetheless, the Superior Court ordered the dismissal of plaintiffs' action on May 19, 1954. The Supreme Court reversed on November 15, 1956. The case was set for trial on the merits on December 7, 1960, but on November 29, 1960 codefendant Mongil-Portell's legal representative withdrew from the case. The trial was again set for February 2, 1961. By May 10, 1961 codefendant Litheda Apartments was in control of the land which plaintiffs claim is theirs. Accordingly, the complaint was amended to include this party as a defendant. Between 1938 and November 17, 1960 other persons came in possession of the property without any apparent physical signs and without the plaintiffs' knowledge. Those persons were not joined to plaintiffs' cause since by November 1960 they had lost all interest in the property and Litheda failed to timely request that they be summoned in eviction. See Memorandum Opinion and Order of October 26, 1982.

6. The precise date of the Secretary's knowledge of the proceedings cannot be determined from the record. Neither can it be determined when or whether Litheda notified its mortgagee and/or the Secretary of Housing of these proceedings.

*Ramírez de Arellano & Co.*, 110 D.P.R. 869, 872–873 Official Translations of the Opinions of the Supreme Court of Puerto Rico, vol. 10, pp. 1136, 1140–1141 (1981) (title insuror may intervene in action for collection of money where property is attached which is subject to mortgages guaranteed to have priority over other liens and the mortgagee is not joined to the action), as insuror of the mortgage it was not an indispensable party to the action. Neither was the mortgagee an indispensable party where any judgment entered in the case could not have any effect on the mortgagee's interests unless and until it was sued and given its day in court. See: *Venable v. Bank of the United States*, 27 U.S. 107, 111–112, 2 Pet. 107, 7 L.Ed. 364 (1830); *Heirs of Rodríguez v. Registrar*, 35 D.P.R. 104, 107, 35 P.R.R. 96, 99 (1926). Plaintiffs' claim against the mortgagee being contingent upon their claim against Litheda Apartments, they could have sued the mortgagee after the conclusion of the cause of action against Litheda. In this separate action the mortgagee would have been entitled to raise the same defense it would have raised had it been joined to the principal action, namely, that it is a third party protected by article 34 of the former Mortgage. Law, *supra*, and any nullity in Litheda's title should not affect its recorded rights. It would not be able, however, to relitigate the issue of the validity of the original judgment by default. It is no different in this case where, given the fact that if plaintiffs prevail in identifying their property as that occupied by Litheda Apartments the unusual situation of a double recording will result in the inapplicability of article 34 of the former Mortgage Law, *supra*, the United States has been joined as mortgagee to ensure a better protection of its rights. This does not mean, however, that the United States may now question the validity of the 1963 resolution, except on legal grounds.[7] Its contention that it is prejudiced by its inability to show that plaintiffs' predecessor was

not judicially declared incompetent is without merit since, even if it had been joined prior to 1963, it could not have controverted the record in Civil 2852 by attacking the allegations made by the plaintiff in that case, codefendant Manuel Fernández-Martínez herein, as to the incompetency of that defendant in that case. Neither it nor any of the other codefendants in this case were parties to that action or had any interest at the time. Codefendant Fernández-Martínez has never denied the fact, having based his defense solely on the correctness of his actions and of the judgment issued by the Clerk of the Municipal Court in Civil 2852. The Superior and Supreme Courts of Puerto Rico correctly based their decisions solely on the record of Civil 2852, of which a certified copy is a part of the file of this case. Those courts ruled that since the incompetency of the defendants in that case, the predecessors of the plaintiffs in this case, appeared from the complaint itself, they could not have accepted the debt and a default judgment against them could not be issued by the Clerk of the Superior Court on November 14, 1932. See *Fernández-Martínez v. Superior Court*, 89 D.P.R. 761–763, 89 P.R.R. 744–746. The circumstances present here do not justify disturbing the law of the case.

For the reasons stated we hold that the 1963 resolution issued in this case by the Superior Court of Puerto Rico, San Juan Part, affirmed by the Supreme Court of Puerto Rico, is conclusive and dispositive of the first cause of action on the issue of nullity of the 1932 default judgment in Civil 2852. The issue of the validity or nullity of the 1932 judgment in Civil 2852 shall not be relitigated in this court.

SO ORDERED.

## OPINION AND ORDER

### ON MOTIONS FOR SUMMARY JUDGMENT

This case, which has been pending in the courts of Puerto Rico since 1947 and before

---

7. It should be noted that the legal determinations made by the courts of the Commonwealth are to be given great deference by this court.

this court since 1978, had been set for trial on January 14 through 25, 1985 but, due to conflicts with the court's calendar of criminal cases, the trial was continued until further notice. Thereafter all parties, including the plaintiffs, have filed motions for summary disposition.

## I. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs argue that the disposition of the principal issue in this case, namely whether the property being revendicated is that occupied by Litheda, may be made without testimonial evidence and solely on the documentary evidence announced at the proposed Pretrial Order. They understand that the trial can be limited to the issue of damages and improvements upon the revendicated property. Defendants Litheda Apartments, Inc. (Litheda) and the United States of America have opposed plaintiffs' request for summary judgment. They claim that there exists a dispute on whether the land to which plaintiffs claim superior title, namely, lot number 471 of the Registry of the Property, Rio Piedras section, and that owned and possessed by Litheda, lot number 211 of the same registry, are one and the same. They contend that this controversy is evident from the description made by plaintiffs of their property in the several amended complaints in which the Guaracanal creek originally appeared as the northern boundary of lot 471 and later appears as a southern boundary, as well as partial boundary to the north. Defendants further contend that plaintiffs are estopped from submitting evidence, such as a plat of their property prepared by civil engineer Luis Vilá-Andino, showing that the Guaracanal creek bounds the property on the east. They claim that plaintiffs are bound by the description of the property in the complaint which shows that their property and Litheda's property are not the same. They have also requested summary judgment in their favor.

After considering these arguments and the documentary evidence on file, we conclude that the identity of plaintiffs' property is in issue. Most of this evidence, consisting of the plats of plaintiffs' and Litheda's property, as well as adjacent properties, requires testimonial evidence for a more complete understanding of the same. We are reluctant to consider this matter lightly, relying solely on our interpretation of such evidence.

We cannot rule that plaintiffs are estopped from showing that the boundaries of their land differ somewhat from those originally given, especially as it refers to a body of water which may change its course with the passage of time, as well as by the interference of man. More than fifty years have elapsed since plaintiffs lost their land to the defendants' predecessors. Since then the land has been grouped with other lands and segregated many times. The owners of adjacent lands, which are generally the point of reference for its demarcation, have also changed with time. It is, therefore, impossible on mere documentary evidence to decide whether plaintiffs' and Litheda's property are or are not the same. Plaintiffs' motion for summary judgment is DENIED and defendants' request for summary judgment is also DENIED.

## II. *Motions for Summary Judgment filed by defendants Estates of Antonio Mongil-Portell and Aracelis Suárez and the Estate of Manuel Fernández-Martinez*

These defendants contend that the cause of action against them is one sounding in tort and that the one-year statute of limitations applicable to such actions under the Civil Code of Puerto Rico, namely, Article 1868 of that Code, 31 LPRA section 5298, is applicable to plaintiffs' cause of action. Their theory is premised on the Supreme Court of Puerto Rico's ruling in *Méndez v. E. Solé & Co.*, 62 D.P.R. 805, 62 P.R.R. 805 (1944) regarding the existence of a cause of action for damages against one who initiates or procures civil proceedings against another without probable cause and with a purpose other than to obtain adjudication of the claim upon which the proceedings are based,

when such proceedings terminate in favor of the defendant. It is their contention that this is such a cause of action simply because no contractual relationship existed between the plaintiffs and the original defendant Manuel Fernández-Martinez. Plaintiffs' cause of action, however, is not of the type suggested by these defendants which is generally known as an action for malicious prosecution or abuse of process, available in Puerto Rico only in exceptional circumstances. See *Berrios v. International General Electric*, 88 D.P.R. 109, 88 P.R.R. 106 (1963). It should be noted that the proceedings initiated against plaintiffs' predecessors never terminated in their favor. Indeed, as a result of the judgment entered against them their property was adjudicated to defendants' predecessor, Manuel Fernández-Martinez. Furthermore, it has never been contended that those proceedings were without probable cause or with a purpose other than to obtain adjudication of a claim. What has been alleged is that the judgment obtained is null because it was issued withoug observance of the due process requirements established by the laws of Puerto Rico. Plaintiffs' cause of action resembles more a cause of action to nullify summary foreclosure proceedings and for damages where the property has been transferred to a third party than one for malicious prosecution. In Puerto Rico, the former cause of action never prescribes while the latter has a fifteen-year limitations period. See *Piovanetti-Doumont v. Martinez*, 99 D.P.R. 663, 664–667, 99 P.R.R. 644, 645–648 (1971) and cases cited therein. Moreover, a cause of action to recover property unlawfully retained by a party without good faith and without just title has a thirty-year period of limitations. See Article 1863 of the Civil Code of Puerto Rico, 31 LPRA section 5293; see also Articles 1857 and 1859 of the Civil Code of Puerto Rico, 31 LPRA sections 5278 and 5280. We hold that the one-year statute of limitations is not applicable to plaintiffs' causes of action. Their action for nullification of the judgment in favor of Manuel Fernández-Martinez and for damages is not barred, having been filed within fifteen years of the entry of the judgment and of the sale of the property to Antonio Mongil-Portell and Aracelis Suárez. Their cause of action against the latter defendants for recovery of the property and the fruits produced thereby having been filed within thirty years after these defendants acquired the property in question, is not time barred, subject, of course, to plaintiffs' showing that these defendants lacked good faith or just title to possess said lands.

The Motions for Summary Judgment filed by the Estates of Antonio Mongil-Portell and Aracelis Suárez and the Estate of Manuel Fernández-Martinez are, therefore, DENIED.

III. *The Motions for Summary Judgment filed by codefendants Litheda Apartments, Inc. and the United States of America*

These codefendants allege that, assuming that plaintiffs' property and Litheda's property are the same, Litheda perfected its title to the property by the passage of the ten-year period established in Article 1857 of the Civil Code of Puerto Rico, 31 LPRA section 5278, for the acquisition of property rights in real property, with just title and in good faith. This allegation is based not on the time Litheda had been in possession of the property prior to its joinder as a defendant in this case, but on its predecessors' uninterrupted possession allegedly in good faith and with just title. They claim that since 1933, when codefendant Antonio Mongil-Portell purchased the property from codefendant Manuel Fernández-Martinez, until 1949, when the former was joined in this case, more than ten years elapsed; that all the time said defendant had a proper title to the land in question and that plaintiffs have not shown, and the evidence shows otherwise, that this defendant did not possess the land in good faith. They further contend that since Luis and Bernardo Mongil, who became owners of the property in 1944 have never been made parties to this case, their uninterrupted possession for seventeen (17) years, also in good faith and with proper

title, has resulted in Litheda's acquisition and perfection of ownership pursuant to Article 1857.

Plaintiffs opposed these motions contending that the uncontroverted facts show lack of good faith on the part of codefendants Fernández-Martinez, and Mongil-Portell, as well as on the part of Bernardo and Luis Mongil-Portell. Furthermore, they contend that defendants Fernández-Martinez and Mongil-Portell never had a proper title to perfect ownership rights on the property pursuant to Article 1857 since their title rested on the judgment declared void "ab initio" by the Supreme Court of Puerto Rico in *Fernández-Martinez v. Superior Court*, 89 D.P.R. 754, 89 P.R.R. 737 (1964). As to Bernardo and Luis Mongil, plaintiffs also allege that they never had a proper title to their land since Antonio Mongil, who acquired it shortly after the public sale, never sold it and never validly transferred it to the Estate of Ezequiel Mongil, when it was apparently grouped without mention with other properties belonging to that Estate. They also allege that, as members of said Estate, Bernardo and Luis Mongil must be charged with knowledge of the defect in the deed of grouping and of the fact that the property they acquired had never been expressly included in that deed. For these reasons, plaintiffs aver that Litheda may not base its right to the property claimed by them on the passage of the ten-year period prescribed in Article 1857.

In Puerto Rico, property may be acquired by the mere passage of time. The Civil Code governs such acquisition in Articles 1830 through 1860, 31 LPRA sections 5241 through 5281. Two distinct situations are covered by the Code. Article 1859 of the Code, 31 LPRA section 5280, covers acquisition by one who possesses or occupies property without title thereto and in bad faith. Such a person may perfect ownership of the property by uninterrupted possession for thirty years. Article 1857 covers acquisition with "proper" title and in good faith and provides a shorter period

of time to perfect such dominion over the property. It is this article on which the movants rely for the issuance of summary judgment in their favor.

Article 1857 of the Civil Code of Puerto Rico provides: "Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title." 31 LPRA section 5278. The terms "good faith" and "proper title" are defined in articles 1850 and 1852 of the Civil Code of Puerto Rico, 31 LPRA sections 5271 and 5273. Article 363 of that Code, 31 LPRA section 1424 establishes other requirements for the possessor "bona fide." Thus, a possessor in good faith is one who "belie[ves] that the person from whom he received the thing was the owner of the same, and could convey his title" and "who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same." 31 LPRA sections 5272 and 1424. The "good faith" of a possessor is always presumed and the burden is on the person alleging lack thereof to prove bad faith. Article 364, Civil Code of Puerto Rico, 31 LPRA section 1425.

Proper title is "that which legally suffices to transfer the ownership or property right, the prescription of which is in question." Article 1852, Civil Code of Puerto Rico, 31 LPRA section 5273. The proper title needed for prescription must also be true and valid. Article 1853, Civil Code of Puerto Rico, 31 LPRA section 5274. Furthermore, the proper title must be proven and may never be presumed. Article 1854, Civil Code of Puerto Rico, 31 LPRA section 5275.

These codefendants allege that the Mongils'[1] titles to the property in question were proper notwithstanding any defect later found to exist in those titles. They seek support in the United States Supreme Court's decision upholding the Supreme Court of Puerto Rico's decision in *Ayllón y Ojeda v. González y Fernández*, 28 D.P.R.

---

1. Antonio Mongil, Bernardo and Luis Mongil.

67, 28 P.R.R. 61 (1920) affirmed 266 U.S. 144, 45 S.Ct. 52, 69 L.Ed. 209 (1924) wherein it was stated that "a just title does not mean a perfect title, as otherwise prescription would not be needed;" *B. Fernández & Bros. v. Ayllón*, 266 U.S. 144, 45 S.Ct. 52, 69 L.Ed. 209 and in *Martorell v. J. Ochoa y Hermano*, 25 D.P.R. 759, 25 P.R.R. 707 (1917), aff'd. on reconsideration 26 D.P.R. 689, 26 P.R.R. 625 (1918) where the Supreme Court of Puerto Rico stated:

> In order that the title may be colorable, it is not necessary that it actually transfers the ownership or property right, but that it is sufficient to transfer it although it may contain a defect which invalidates it. And this is necessarily so, because if under the name of color of title, which the law requires for prescription, is meant only a title clothed with all the internal and external requisites necessary for the real and actual transfer of ownership, prescription would be superfluous as a means of acquiring ownership. 26 P.R.R. 638

■ Unlike *Ayllón* and *Martorell* and other cases which have cited them, the defect in the Mongil titles derived from the judgment entered against the plaintiffs' predecessors which the Supreme Court of Puerto Rico held to be null and void in *Fernández-Martinez v. Superior Court*, 89 D.P.R. 761–763, 89 P.R.R. 744–746. The judgment declared their titles void and nonexistent, not merely voidable.[2] Civil Law commentators agree that pursuant to article 1953 of the Spanish Civil Code, identical to article 1853 of the Civil Code of Puerto Rico, 31 LPRA section 5274, the proper title for acquisition of ownership rights

pursuant to article 1857 [3] is not that which, not being absolutely valid, is absolutely void, but only that which is merely voidable. See Puig-Brutau, José, *Fundamentos del Derecho Civil*, T. III, Vol. 1, pp. 365–368 (1971); Puig-Peña, Federico, *Tratado de Derecho Civil Español*. T. III, Vol. 1, pp. 206–210 (2d ed.1972); Santos-Briz, Jaime, *Derecho Civil, Teoria y Práctica*, T. II, pp. 254–256 (1973); Scaevola, Quintus Mucius, *Código Civil*, T. XXXII, Vol. 1, pp. 582–615 (1965). This was seemingly the Supreme Court of Puerto Rico's reasoning in *Fuentes v. Heirs of Fuentes*, 94 D.P.R. 588, 94 P.R.R. 561, (1967), where, upon affirming the Superior Court's judgment decreeing the nullity of certain summary foreclosure proceedings, the court considered that, since the then owner and possessor of the property in question was not protected by Article 34 of the former Mortgage Law, 30 LPRA section 59,[4] the decisive factor in determining his rights to the property was "whether the title of his transferors was affected by nullity, *irrespective of his knowledge thereof.*" *Fuentes*, 94 P.R.R., 567 (emphasis added).[5]

Thus, irrespective of Antonio Mongil's good faith in purchasing lot 471 from codefendant Fernández-Martinez, he never acquired a proper title to the same, either by purchase or pursuant to article 1857 of the Civil Code. Without a title, he could not have grouped this property to other properties of the Estate of Ezequiel Mongil, even if the property had been described in the deed of grouping, nor transferred it to the Estate or reacquired it the same day,

2. For discussion as to the difference between "void" and "voidable" acts or contracts see Manresa, José Maria, *Commentarios al Código Civil Espanñol*, T. VIII, Vol. II, pp. 601–628 (5th ed. 1950), cited in *Oliver v. Oliver*, 23 D.P.R. 181, 191, 23 P.R.R. 168, 177 (1915).

3. Article 1957 of the Spanish Civil Code.

4. Now, article 105 of the Mortgage Law of 1979, 30 LPRA section 2355.

5. We have found no cases expressly adopting the commentators' opinion as to what is to be considered a "proper" title under article 1857 of

the Civil Code. As stated above, all the cases construing articles 1852 and 1853 deal only with voidable titles. However, in one of the many occasions that the present case has been before the Supreme Court of Puerto Rico, the court, in a dictum, stated that Antonio Mongil never acquired title to lot 471 since the judicial sale by virtue of which his seller acquired the property was declared null and void. *Pérez-Cruz v. Fernández*, 101 D.P.R. 365, 370, Official Translations of the Opinions of the Supreme Court of Puerto Rico, vol. 1, pp. 508, 516 (1973).

among others, in the distribution of that estate, nor sold it to his mother, Carmen Portell in 1944, who, in turn, sold it to Bernardo and Luis Mongil.[6] Due to the nonexistence of Antonio Mongil's title to lot 471, all the titles deriving from his title are also nonexistent. Bernardo Mongil, who retained that part of the property which not Litheda occupies, never had a proper title thereto and could not perfect his dominion over it pursuant to article 1857. Since he sold the property to Litheda in 1960, only twenty-seven years since his predecessors Fernández-Martínez and Antonio Mongil first had possession of the same, he did not perfect ownership rights pursuant to article 1859, with bad faith and without proper title. Since its seller did not have a title, either by purchase or under articles 1857 or 1859 of the Civil Code, at the time of the sale, Litheda could only acquire title to the property if it had continued to possess the same without interruption until 1963. Since Litheda was joined to this action in 1961, its possession was interrupted. It has not acquired ownership rights over the property. See Article 1845, Civil Code of Puerto Rico, 31 LPRA section 5266. The United States and Litheda's motions for summary judgment are both DENIED.[7]

SO ORDERED.

6. We are assuming, for purposes of this motion only, that lot 471 and the property occupied by Litheda are the same and that it was lot 471 which was grouped with other properties of the Estate of Ezequiel Mongil in 1938, without specific mention or description of that property.

7. In its motion, the United States renewed its contention that plaintiffs' action against it is barred by the federal statute of limtations or, in the alternative, by plaintiffs' laches and unclean hands. This Court decided the issue in the Opinion and Order of October 21, 1983 wherein it held that 28 U.S.C. section 2401 was applicable but that time did not begin to run until plaintiffs succeeded against codefendant Litheda Apartments and acquired possession of the land in question. Assuming that laches could be considered in relation to the joinder of the United States pursuant to Rule 16 of the Rules of Civil Procedure of Puerto Rico, corresponding to Rule 19 of the Federal Rules of Civil

Procedure, where the statute of limitations has not expired or begun to run the defense is to be considered in light of the existing parties in the action. The prejudice caused to plaintiffs by the late joinder of the United States has been, indeed, great for as more time goes by it becomes more difficult to identify their property. On the other hand, the United States has been on notice of this case at least since 1967 and has been "monitoring" the case since then. Codefendant Litheda Apartments has actively defended the case to the benefit of both mortgagor and mortgagee and has been cooperative with its mortgagee, the United States of America. Furthermore, much of the delays in this case have been caused by other codefendants, including Litheda Apartments, although perhaps they could have been avoided by a more persistent attorney than plaintiffs'. We thus do not find any "unclean hands" or "laches" on the part of plaintiffs in this case.